Anna E. Bullock

*v.*

Thomas O. Bullock et al.

1. A bill asking for the specific performance of an order directing the payment of alimony, by giving a mortgage on lands in this state, made upon a judgment in a suit for divorce from the bonds of matrimony in a sister state, will not be sustained on a motion to strike out under the rules, in the nature of a demurrer.

2. Such judgment, when properly obtained, is only *prima facie* evidence, in another state, of the matters litigated therein, and can only be enforced in such sister state by another suit.

3. So long as the court in which such judgment was originally obtained has jurisdiction of the person, such order can be enforced against him by the court by compelling him to execute it.

On motion to dismiss the bill under the two hundred and thirteenth rule.

*Mr. James Buchanan,* for the motion.

*Mr. Edward Q. Keasbey,* for the complainant, *contra.*

Bird, V. C.

The bill in this cause is filed for the purpose of enforcing a decree and order of a court in the State of New York, upon a petition filed there in a suit for divorce from the bonds of matrimony, in which it was directed that the defendant should pay to the petitioner the sum of $100 per month, and the order was that he should, in order to secure the payment thereof, execute

Bullock v. Bullock.

to the petitioner a mortgage upon a certain tract of land lying in the State of New Jersey. The mortgage to be so given was to be in such form as the court should subsequently approve. The court subsequently directed the said defendant to execute a mortgage upon all his real estate, and particularly upon the real estate owned by him in the State of New Jersey. One of the conditions of the mortgage so directed by the said court to be given was as follows:

"And it is hereby expressly agreed that after default in the payment in the manner provided, of any of the sums of money herein mentioned, for the space of sixty (60) days; or after default in the payment of any tax or assessment on said premises for the space of ninety (90) days after notice and demand, then that there shall become due and be deemed as secured by this Indenture of Mortgage, at the option of the said party of the second part at the time of such default, a sum of money equivalent to the present worth of an annuity of Twelve Hundred Dollars a year, payable monthly during the probable lifetime of the said Anna E. Bullock."

The prayer is that the said defendant be decreed " to execute and deliver to the complainant the mortgage on said premises therein directed, to be made and delivered according to the form therein provided," together with the general prayer for other and further relief.

Under the rules, notice was given to strike out the bill of complaint, principally because, by the said bill, the complainant sought the specific performance, by the court of chancery of this state, of the judgment or decree of another state, which had no jurisdiction of the lands which such decree directed should be put in pledge by way of mortgage, to secure the payment of money which the defendant in this suit in such other state was decreed to pay.

Is this motion well taken? In other words, is the full faith and credit contemplated by the fourth section of the first article of the constitution of the United States, and laws made in pursuance thereof, comprehensive enough to embrace the case made by this bill?

That a decree for the payment of alimony obtained in a sister state may be enforced in this state, there is no doubt. This is

settled by the case of *Barber* v. *Barber*, *21 How. 582*. To this extent the courts of this state have gone. But how? According to what form of procedure? Shall it be according to the form of procedure in the state where the decree was rendered or the form of procedure in the state in which such enforcement is sought? The complainant insists that the sister state not only had the right to pronounce a judgment or decree fixing the amount of alimony due, but also to adjudge the means by which it shall be collected or secured. In my judgment, the faith and credit contemplated by the constitution and the laws extend only to judgments or decrees, and have no reference whatsoever to process in the nature of an execution.

So far as I have been able to ascertain from a very thorough examination, the courts have taken this view of the case. I have not discovered an instance where the title to property located beyond the jurisdiction of the court in which the judgment or decree was pronounced, has been allowed to be affected in any manner by the efforts of the courts pronouncing the judgment or decree, except as they have done so by proceeding against him in person. This view seems to be strongly supported by all the judges who have considered it. The general doctrine will be found presented in the following cases: *Nelson* v. *Potter*, *21 Vr. 324*; *Lindley* v. *O'Reilly*, *21 Vr. 636*; *Davis* v. *Headley*, *7 C. E. Gr. 115*, cited in *Nelson* v. *Potter*, *supra*; *McCormick* v. *Sullivant*, *10 Wheat. 192*; *Darby* v. *Mayer*, *10 Wheat. 465*; *McElmoyle* v. *Cohen*, *13 Pet. 312*; *Farmers' Loan and Trust Co.* v. *Postal Telegraph Co. et al.*, *55 Conn. 334*.

That judgments obtained in one state are only made effectual by the courts pronouncing them, by proceedings *in personam*, is fully established by the following authorities: *Farmers' Loan and Trust Co.* v. *Postal Telegraph Co.*, *supra*; *Carpenter* v. *Strange*, *141 U. S. 87*; *Lewis* v. *Darling*, *16 How. 1*; *Booth* v. *Clark*, *17 How.* (*U. S.*) *322*.

But counsel for the complainant earnestly insists that many cases mean more than is to be implied from the foregoing, and in that belief calls attention to the following cases: *Massie* v. *Watts*, *6 Cranch 148*, in which case the celebrated case of *Penn*

·v. *Lord Baltimore* is referred to and commented upon, as was also the case of *Arglasse* v. *Muschamp, 1 Vern. 75 ;* as was likewise the case of *Earl of Kildare* v. *Morrice, Eustace & Fitzgerald, 1 Vern. 419 ;* as well as the cases of *Toller* v. *Carteret, 2 Vern. 494 ; Barber* v. *Barber, 21 How. ( U. S.) 582 ; Cheever* v. *Wilson, 9 Wall. ( U. S.) 108.* I think the proper consideration of these cases will lead to the certain conclusion that the only power which the courts claim was that of proceeding against the person. The language of Chief-Justice Marshall expresses the whole doctrine upon this point in concluding his judgment in the case of *Massie* v. *Watts, supra.* He said : " Upon the authority of these cases and others which are to be found in the books, as well as upon general principles, this court is of opinion that, in a case of fraud, or trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of the court may be affected by the decree." I presume no one will deny that, when defendants are properly brought into a court of equity and decrees are pronounced against them, it has the power to compel them to perform or execute such decrees wherever the lands or goods in controversy may be situate. The case of *Cheever* v. *Wilson* goes no further than this. In that case a decree of divorce was pronounced in Indiana upon an agreement between the parties that the wife should assign certain of her rents coming due to her from lands in the District of Columbia. After the decree was entered, the wife made an assignment in accordance with the agreement and the decree. It was to enforce this assignment of the rents and profits that the bill was filed in that case, and the real controversy was as to the amount due.

Then, if these things be so, what was the object of the provision of the constitution referred to ? Simply that full faith and credit should be given to the judgments of sister states when offered as evidence or made the foundation of legal proceedings. When properly or regularly obtained by a court having jurisdiction of the person and the subject-matter, they are not to be questioned unless it can be shown that they have been discharged, or that they were fraudulently obtained, or were founded upon

a penalty or forfeiture, or that they are within the statute of limitations. *Rice Evid.* § *142*, where the limits of the rule, as well as the fullest scope claimed for it, are presented and the authorities relied upon. *1 Greenl. Evid.* §§ *546, 547, 548.* In this last section, Prof. Greenleaf, using the language of Mr. Justice Story, says : " The constitution did not mean to confer any new power upon the states, but simply to regulate the effect of their acknowledged jurisdiction over persons and things within their territory. It did not make the judgments of other states domestic judgments, to all intents and purposes, but simply gave a general validity, faith and credit to them as evidence. No execution can issue upon such judgments without a new suit in the tribunals of other states. And they enjoy not the right of priority, or privilege, or lien which they have in the state where they are pronounced, but that only which the *lex fori* gives to them by its own laws, in the character of foreign judgments."

Then, what is the outcome of this tedious discussion of the courts upon the effect to be given to the words of the constitution and the laws of congress passed in pursuance thereof? This question, I think, has been fully answered in the language of Mr. Justice Wayne, in the case of *McElmoyle* v. *Cohen, 13 Pet. 312*, which, at the risk of repetition, I will quote. Two points were controverted : " 1. Whether the statute of limitations of Georgia can be pleaded to an action in that state, founded upon a judgment rendered in the State of South Carolina. 2. Whether, in the administration of assets in Georgia, a judgment rendered in South Carolina, upon a promissory note against the intestate when in life, should be paid in preference to simple contract debts. Upon neither of these points does the court entertain a doubt. Upon the first of them, we observe, though a judgment obtained in the court of a state is not to be regarded in the courts of her sister states as a foreign judgment or as merely *prima facie* evidence of a debt to sustain an action upon the judgment, it is to be considered only distinguishable from a foreign judgment in this, that, by the first section of the fourth article of the constitution and by the act of May 26th, 1790, section 1, the judgment is a record conclusive upon the merits,

Bullock v. Bullock.

to which full faith and credit shall be given when authenticated as the act of congress has prescribed.   It must be obvious, when the constitution declared that full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state, and provides that congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof, that the latter clause, as it relates to judgments, was intended to provide the means of giving to them the conclusiveness of judgments upon the merits when it is sought to carry them into judgments by suits in the tribunals of another state.   The authenticity of a judgment and its effect depend upon the laws made in pursuance of the constitution.   The faith and credit due to it as the judicial proceeding of a state is given to the constitution independently of all legislation.   By the law of the 26th of May, 1790, the judgment is made a debt of record not examinable upon its merits, but it does not carry with it into another state the efficacy of a judgment upon property or persons to be enforced by execution.   To give it the force of a judgment in another state, it must be made a judgment there, and can only be executed in the latter as its laws may permit.   It must be conceded that the judgment of a state court cannot be enforced out of the state by an execution issued within it.   This concession admits the conclusion that, under the first section of the fourth article of the constitution, judgments out of the state in which they are rendered are only evidence in a sister state that the subject-matter of the suit has become a debt of record, which cannot be avoided but by the plea of *nul tiel record.*"   And after speaking of the want of faith and credit or conclusiveness of foreign judgments when produced and offered in evidence, the learned jurist proceeds : " Here, again, we have contemporaneous legislative interpretation of the first section of the fourth article of the constitution, for, by the act of May 26th, 1790, it was declared 'that the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them within every court within the United States as they have by law or usage within the courts of the state from whence the said records are

Bullock *v.* Bullock.

or shall be taken.' What faith and credit, then, is given in the states to the judgments of their courts? They are record evidence of a debt or judgment of record, to be contested only in such way as judgments of record may be, and consequently are conclusive upon the defendant in every state, except for such cases as would be sufficient to set aside the judgment in the courts of the state in which it was rendered. * * * It is therefore put upon the footing of a domestic judgment, by which is meant, not having the operation and force of a domestic judgment beyond the jurisdiction declaring it to be a judgment, but a domestic judgment as to the merits of the claim or subject-matter of the suit. * * * It has been well said: ' The constitution did not mean to confer a new power of jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the state.' "

It will be seen that the proposition first above stated is included in and controlled by the one last stated, yet I venture upon presenting the former, in order that the latter may have a practical illustration in the discussion, and this seems to be justified because the courts have been called upon so frequently to determine the law upon that branch of the discussion.

It being thus definitely settled that a judgment properly obtained in one state only determines the rights of the parties as to the merits of the controversy, and that such judgment can only be made available or introduced as an instrument of evidence in one of the sister states of the Union, and is only entitled to full faith and credit as such when so offered in evidence, the question with which we set out—by what method or procedure is it to be made available in a judicial proceeding in such sister state?—recurs. Happily, this has been settled beyond all controversy. The case last cited shows that a new suit must be instituted in the sister state in which the judgment is sought to be enforced. This, it will be perceived, has reference to the remedy. In *Gulick* v. *Loder, 1 Gr. 68,* it is laid down thus: " Remedies are to be regulated and pursued according to the *lex fori,* the law of the place where the action is instituted, and not by the *lex loci contractus,* or the law of the place where the con-

Bullock *v.* Bullock.

tract was made." In *Harker* v. *Brink, 4 Zab. 333,* the court says
.(at *p. 345*): "It is true that all contracts are presumed to be
made in reference to the laws of the country where they are
·entered into or to be performed, but this applies to the contract
itself, not to the mode of enforcing it.    The law of the place
where the contract is made will decide the validity of the contract
.and will govern its nature, obligation and construction."    But it
is universally established that the forms of remedies, the modes
of proceeding and the execution of judgments are to be regulated
solely and exclusively by the laws of the place where the action
is instituted.    In *Wood & Wood* v. *Malin, 5 Halst. 208,* the same
principle is expressed, and the facts which led to the judgment
.are worthy of attention.    The defendant was arrested in this
state upon a contract made in the State of New York, where
both parties resided at the time the contract was made.    The
·defendant sought to be liberated on common bail, because he had
taken the benefit of the insolvent laws of the State of New York
subsequently to the making of the contract.    The court refused
·to discharge him.    The case of *Garr* v. *Stokes, 1 Harr. 404, 405,*
.strikingly covers the point insisted upon by the complainant,
which was that the spirit of comity existing between the states
·would prompt the specific performance of the order in question.
In the case referred to the defendant was proceeded against in
this state by *capias.*    The defendant insisted that, by the laws
.of the State of New York, where the contract was made which
·was the subject of the action, he was exempt from arrest or
imprisonment.    The court said: "It is unnecessary to spend
.any time to show the futility of such an objection.    This is a
.question of *lex fori* and not of *lex loci contractus.*"    *Armour* v.
*McMichael, 7 Vr. 92, 94; U. S. Bank* v. *Donally, 8 Pet. 361,*
.*371; Wilcox* v. *Hunt, 13 Pet. 378, 380; Hawkins* v. *Barney, 5
Pet. 457; Chapin* v. *Dobson, 78 N. Y. 77.*

  The result of this investigation has been to satisfy me that
neither the provisions of the constitution, nor the acts of con-
:gress, nor any adjudication of the courts, go so far as to include
the prayer of the complainant that this court should require the
.defendant to specifically perform the order made by the court in

the State of New York, which is in the nature of final process,. made upon a judgment theretofore obtained in that state, it being the object of that order so made to enforce compliance with that judgment.

I will advise an order allowing the motion, with costs.