16 N.J. Super. 415 (1951)
84 A.2d 731
FLORENCE A. WHITEHEAD, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
JOSEPH G. VILLAPIANO, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1951.
Decided November 28, 1951.
*418 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
Mr. Theodore D. Parsons argued the cause for appellant (Mr. Vincent D. Keuper, attorney).
Mr. Lee F. Washington argued the cause for respondent (Mr. John W. Keogh, attorney).
The opinion of the court was delivered by WILLIAM J. BRENNAN, JR., J.A.D.
Defendant appeals and plaintiff cross-appeals from a judgment entered in the Chancery Division in this action upon a Nevada judgment. The parties were divorced in Nevada in 1932. The decree *419 was obtained by the defendant husband after the parties had made an agreement that "in the event a divorce is granted" the decree should provide, and it does, for stipulated monthly alimony for the wife and, to secure the payment of the same, that the husband at his expense "shall carry" a $10,000 life insurance policy naming the wife as beneficiary. The wife appeared in the Nevada action by her attorney. We are not informed where the parties lived before the suit was brought. The decree restored to the wife her former name and she now resides in Virginia.
In 1937 the parties made a written agreement reducing the amount of the monthly alimony payments. Defendant paid the reduced amounts until the agreement expired by its terms on July 1, 1942. He paid plaintiff nothing after that date; and he never secured the required life insurance.
Plaintiff made no demands for payments or that defendant carry the insurance until she brought this action in June, 1950. She supports her complaint solely upon the contention made in the pretrial order that "such judgment is entitled to full faith and credit in the courts of our state as directed in Article IV, Section 1, of the United States Constitution, as well as by the Act of Congress of May 29, 1790, as amended and supplemented."
The first count asks judgment for arrearages, including the difference between the payments made under the 1937 agreement and the amounts called for by the Nevada decree. The second count asks that defendant be ordered to obtain and to deliver to plaintiff the life insurance policy ordered by the Nevada decree "or in lieu thereof to furnish other security or collateral to effectuate the terms thereof." An allowance for counsel fee is also applied for.
The trial court ruled that it was obliged to accord full faith and credit to the Nevada decree. Accordingly, the entry of a judgment for arrearages was directed, limited, however, to the accruals since July 1, 1942, the expiration date of the 1937 agreement, and defendant was ordered to provide a life insurance policy in accordance with the terms *420 of the Nevada decree. A counsel fee was denied on the ground that the court was without authority to make such allowance as the action is not a "matrimonial action" as defined in Rule 3:82(b).
Because the Nevada decree recites that the alimony awarded and the provision to secure its payment gave effect to an agreement of the parties that the same should be ordered "in the event a divorce is granted," defendant contends that full faith and credit was to be denied the decree under the decision in Staedler v. Staedler, 6 N.J. 380 (1951). That case held that New Jersey was not obliged to credit a Florida decree divorcing "married domiciliaries" of this State when it appeared that an agreement between the parties made in New Jersey before the husband went to Florida to institute the action against the wife conditioned its provisions for the wife's support upon her entry of "any appearance required in the divorce proceeding" and that the support provisions should become inoperative should she "oppose said divorce proceedings," and the husband retained and paid the fee of the attorney whose appearance was entered for the wife and who admitted in her behalf the jurisdictional facts alleged in the husband's complaint and performed only perfunctorily at the hearing.
The Supreme Court found that "the purpose of the agreement was to suppress any inquiry that would disclose the fraud and make a mockery of any appearance by the respondent (the wife) in the Florida proceeding, and that it was not intended that any divorce proceeding between the parties should be an adversary proceeding"; that "the illegality of a contract is to be determined by the law of the place of the contract" and "this agreement is obviously contrary to the public policy of this State and is likewise contrary to the public policy of the State of Florida"; that the appearance of the attorney in the Florida proceeding "ostensibly on behalf of the wife was an appearance by him as agent for the husband who paid for his services and controlled his actions." Accordingly, it was held that the decisions of the *421 United States Supreme Court in Davis v. Davis, 305 U.S. 32, 59 Sup. Ct. 3, 83 L.Ed. 26 (1938), Sherrer v. Sherrer, 334 U.S. 343, 68 Sup. Ct. 1087, 92 L.Ed. 1429 (1948), and Coe v. Coe, 334 U.S. 378, 68 Sup. Ct. 1094, 92 L.Ed. 1451 (1948), did not require that the courts of this State give full faith and credit to the Florida decree as the principles of those cases
"only apply to a true adversary proceeding where the parties are represented by counsel of their independent choice and where there is an opportunity to make a voluntary decision on the question as to whether or not the case should be fully litigated either on the question of jurisdiction or the merits, and that once an election has been made by the defendant under such circumstances and conditions that then and then alone can the judgment of the court be res adjudicata and the full faith and credit clause operate for the advancement of justice rather than for the perpetration of a fraud."
This case is not ruled by the Staedler decision. Even assuming that the husband who obtained the decree may be heard to attack it as being rested upon an agreement allegedly offensive to the public policy of this State (and he attacks the provisions touching alimony only and not the divorce), nonetheless, not only was it not made to appear but it was not even charged that the Nevada action was not a "true adversary proceeding." And none of the facts significant to a determination upon that question was proved or attempted to be proved. We are not told of what state the parties were "married domiciliaries" at or before the time the husband brought the Nevada action; nor in what state the contract was made; nor whether the contract conditioned its support provisions upon the wife's cooperation in entering an appearance and refraining from a contest; nor who retained and paid the attorney who appeared for the wife; nor the extent of the hearing and the extent of the participation therein by the wife's attorney. We are bound, therefore, to recognize the prima facie effect of the decree that the husband "had a bona fide domicil in Nevada, not that the Nevada domicil was a sham," Williams v. North Carolina, (first case), 317 U.S. 287, 63 Sup. Ct. 207, 87 L.Ed. 279 (1942). The full faith *422 and credit clause requires that prima facie validity be accorded to the divorce decree of a sister state. Esenwein v. Pennsylvania, 325 U.S. 279, 65 Sup. Ct. 1118, 89 L.Ed. 1608 (1945); Giresi v. Giresi, 137 N.J. Eq. 336 (E. & A. 1945); Morrissey v. Morrissey, 1 N.J. 448 (1949).
Merely because the decree recites that the support award gives effect to an agreement for alimony "in the event a divorce is granted," we cannot presume what was found affirmatively to have been proved as to Florida in the Staedler case, namely, that Nevada "has been deliberately deceived in proceeding to judgment in a cause over which * * * it had no jurisdiction." So, where want of jurisdiction over either the person or the subject matter is not shown, the judgment of a sister state cannot be refused the full faith and credit secured by the Federal Constitution merely because the transaction underlying the judgment may offend the public policy of this State; our local policy must give way before the constitutional mandate. Peff v. Peff, 2 N.J. 513 (1949); and see Johnson v. Muelberger, 340 U.S. 581, 71 Sup. Ct. 474, 95 L.Ed. 552 (1951). The judgment is conclusive in this State on the validity of the cause of action. Fauntleroy v. Lum, 210 U.S. 230, 28 Sup. Ct. 641, 52 L.Ed. 1039 (1908).
Defendant next contends that plaintiff's failure for almost eight years to demand alimony payments was evidence that she had maintained herself for that considerable period of time and that as a matter of equitable consideration the trial court should have granted her at most a judgment for one year's installments, that is, that the one-year so-called ecclesiastical rule should have been applied. See Wilson v. Wilson, 14 N.J. Misc. 33 (Ch. 1935). The trial court stated its desire to impose such a limitation but believed itself powerless to reduce or cancel installments past due under the Nevada decree. That this is so is clear. Defendant had not applied to the Nevada court before this suit was brought for a modification of the decree as to accrued installments. Generally speaking, where a decree of a sister state is rendered *423 for alimony which is made payable in future installments, the right to such installments becomes absolute and vested upon their becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments. Bolton v. Bolton, 86 N.J.L. 622 (E. & A. 1914); Conwell v. Conwell, 3 N.J. 266 (1949); Sistare v. Sistare, 218 U.S. 1, 30 Sup. Ct. 682, 54 L.Ed. 905 (1910). We are referred to no decisions of the Nevada courts upon the question whether the arrears under this decree are subject to cancellation or modification in that state, and, in the absence of judicial decisions of Nevada clearly establishing that the arrears may be cancelled, "every reasonable implication must be resorted to against the existence of such power." Sistare v. Sistare, supra; 6 A.L.R.2d, 1277, at 1286. We thus have no occasion to decide the applicability to this 1932 decree of a Nevada statute enacted in 1949 providing that "judgments for alimony and support shall not be subject to modification as to accrued installments, but only as to installments not accrued at the time a motion for modification is filed," Act of March 17, 1949, Comp. Laws, Nev. Supp. 1943-49, sec. 9474.01. See Miller v. Miller, 122 F.2d 209 (Ct. Apps. D.C. 1941). And in any event, if, like a New Jersey decree, past due installments under the decree of a sister state may be but have not been modified as to amount in the courts of that state, arrearages for even one year are not recoverable in an action in this State upon the decree; plaintiff is not to have judgment in any amount as the past due installments are then not vested, and the decree not final, so that it is not entitled to credit at all. Lynde v. Lynde, 181 U.S. 183, 21 Sup. Ct. 555, 45 L.Ed. 810 (1901); Frank v. Frank, 7 N.J. 225 (1951), affirming on this point, 10 N.J. Super. 73 (App. Div. 1950).
Defendant's next point is that the suit is barred by the Nevada statute of limitations providing that an action upon a judgment can only be commenced within six years. Comp. Laws, Nev., 1929, sec. 8524. The argument is that *424 the action was barred July 1, 1948, six years after July 1, 1942, the date of the last payment under the 1937 agreement. This contention plainly has no merit. At best the statute runs as to each installment from the date that it accrues and suit is not barred by the Nevada statute as to any installment which accrued within six years of the filing of the action. Miller v. Miller, supra; 137 A.L.R. 884, at 890. No authority contra the holding in the Miller case is cited to support the proposition that acquiescence in continuous defaults over a six-year period would bar suits for installments which became due within the six-year period prior to the institution of this suit. Cf. Davis v. Gould, 131 S.W.2d 360 (Springfield Ct. Apps. Mo., 1939); Suydam v. Suydam, 5 N.J. Super. 359 (App. Div. 1949). Furthermore, nothing in the Nevada statute of limitations suggests that the limitation is in reality one upon the right; rather, as is generally the case with such statutes, the limitation is to be treated as a matter of procedure to be governed by the law of the forum. Goodrich, Conflict of Laws (1949), p. 240 et seq. The rule in this State is that the judgment of a sister state can be enforced here at any time within 20 years, after which a presumption of payment would arise. Symmes v. Avery, 98 N.J.L. 358 (Sup. Ct. 1923).
Defendant's last point, however, is well taken. New Jersey is not obliged by the full faith and credit clause to give effect to the provision for the carrying of life insurance which was merely intended as security for the payment of the alimony. Lynde v. Lynde, supra; Bullock v. Bullock, 52 N.J. Eq. 561 (E. & A. 1894), affirming 51 N.J. Eq. 444 (Ch. 1893); Bennett v. Bennett, 63 N.J. Eq. 306 (E. & A. 1901); Annotations, 18 A.L.R.2d 862; 97 A.L.R. 1197. When such provisions are enforced, the undertaking does not rest on any constitutional obligation to do so, but on the general policy of the forum. By statute, R.S. 2:50-37, the Chancery Division is empowered "after judgment of divorce, whether obtained in this state or elsewhere," to make "such order touching the alimony of the wife * * * and require *425 reasonable security for the due observance of such orders," see Conwell v. Conwell, supra; but this action is not brought under that statute; rather the insistence on the part of plaintiff is that New Jersey has a constitutional obligation to enforce the Nevada decree in its entirety. Even if the case in this respect had been pleaded and tried upon that statute, reversal of the command upon defendant to obtain the life insurance would be nonetheless required as the power under the statute to direct the giving of security pertains only to security for orders thereunder touching future alimony, and no order for future alimony was sought by the plaintiff.
Turning now to plaintiff's cross-appeal, she first complains that the judgment in respect to arrearages did not include the amount she claimed under the decree for the years from 1937 to 1942 after allowance for the amounts paid her by defendant under the 1937 agreement. That agreement was pleaded by defendant as a bar to any claim for those years, and with leave of the court plaintiff filed a replication admitting the making of the agreement but alleging "that it is nudum pactum and void for lack of consideration." The contract is under seal and there being no evidence of want of consideration, the seal under the law of this State is presumptive evidence of sufficient consideration. R.S. 2:98-4. True, where the contract was made does not appear, but, if made in another state, the law of that state was not pleaded or proved. So, if made in a sister state, the defense is nonetheless without merit whether we presume that the applicable law is the common law, Waln v. Waln, 53 N.J.L. 429 (E. & A. 1891), R.S. 2:92-18, which excluded testimony as to the want of consideration in a specialty, Stryker v. Vanderbilt, 25 N.J.L. 482 (Sup. Ct. 1856), or that our own rule is to be applied by presuming that the law of the sister state is the same as ours, or that the parties by their failure to plead and prove the foreign law are to be deemed to acquiesce in the application of the New Jersey law as the only law before the court. Leary v. Gledhill, 8 N.J. 260 (1951) (decided November 26, 1951).
*426 Plaintiff's second and last point is that the trial court erred in holding that this was not a "matrimonial action" within Rule 3:82(b) and upon that ground denying her application for an allowance of counsel fees. The definition of "matrimonial action" stated in the rule includes "in general, all actions directly involving * * * the support of wives and former wives," and plaintiff argues that this action is within the cover of that provision. But her action does not "directly" involve her support. As pleaded and tried it is in legal essence simply an action upon a debt of record and not a suit for alimony. Lawrence v. Lawrence, 196 Ga. 204, 26 S.E.2d 283 (1943). The trial judge correctly viewed the first count as pleading a claim cognizable at law and proceeded to judgment only after counsel waived a jury trial.
The trial judge granted a stay pending this appeal but on terms that the defendant pay "future support to the plaintiff in accordance with the decree of the Nevada court." Plaintiff did not plead a claim for future alimony under R.S. 2:50-37. Except as authorized by that section, the court is powerless to award future alimony to a wife divorced under a decree entered elsewhere than in New Jersey. Hughes v. Hughes, 125 N.J. Eq. 47 (E. & A. 1939); Conwell v. Conwell, supra. The direction to pay future alimony as a condition to the stay was not justified in the circumstances. So, that defendant be not prejudiced, it is directed that the amount of the judgment as to arrears be reduced by crediting thereon the aggregate of any payments proved to have been made pursuant to the terms of the stay.
The judgment is reversed as to the provision that defendant procure a life insurance policy in accordance with the terms of the Nevada decree, and in all other respects is affirmed subject only to the reduction, if any, which it may be determined should be made as to the amount of arrears after further proceedings consistent with this opinion. No costs to either party.