Rachel B. FOX, Appellant,

v.

Robert K. FOX, Appellee.

No. 18645.

Court of Civil Appeals of Texas,
Dallas.

June 30, 1975.

Rehearing Denied Aug. 7, 1975.

Walter H. Mizell, Thompson, Knight, Simmons & Bullion, Dallas, for appellant.

Ben L. Krage, Rosenberg, Kasmir & Willingham, Dallas, for appellee.

AKIN, Justice.

This is an action to enforce a New Jersey judgment obtained by plaintiff Rachel B. Fox against the defendant Robert K. Fox for accrued and unpaid alimony ordered in a divorce decree. The district court refused to give full faith and credit to the New Jersey judgment and entered a summary judgment for the defendant. Plaintiff appeals.

Two principal questions are presented by this appeal. First, was the 1971 New Jersey divorce decree void as to the alimony and attorney's fees awarded because the New Jersey court lacked in personam jurisdiction over the defendant in that proceeding? Secondly, was the September 4, 1973 default judgment for accrued and unpaid alimony, attorney's fees, and court costs void because of lack of jurisdiction over the person of the defendant by the New Jersey court? We answer both questions in the negative and, therefore, reverse and render the judgment of the trial court.

The facts are undisputed. The parties were married on April 2, 1955, in New Jersey, and lived together in that state until they separated in August 1967. On April 20, 1968, they signed a separation agreement providing that defendant would pay child support in the amount of $40 per week and alimony in the amount of $30 per week. The agreement also provided that defendant was to receive one-half of the net proceeds from the sale of the parties' home. When this agreement was signed, the parties resided in New Jersey. In January 1969, the defendant moved to Texas and became a resident of this state. Approximately two years after defendant became a Texas resident, plaintiff initiated divorce proceedings in New Jersey. Service was obtained upon the defendant in Texas by having him served with citation from the New Jersey court by an appropriate Texas official. The defendant made no appearance in the New Jersey divorce action. A divorce judgment was rendered April 22, 1971 which incorporated the identical terms of the separation agreement of April 20, 1968. The defendant failed to pay the alimony and in 1973 plaintiff filed a motion for judgment with the New Jersey chancery court for alleged unpaid alimony in the amount of $4,720 and for an unpaid attorney's fee award of $750 provided for in the original divorce decree, together with unpaid court costs from the divorce action in the amount of $155.55. In this action service was had upon the defendant by certified mail, return receipt requested. Defendant signed the receipt, but made no appearance, and plaintiff was granted a default judgment for alimony arrearages on September 4, 1973.

On October 24, 1973, plaintiff initiated this action in a Texas district court to enforce the New Jersey judgment for alimony arrearages. Each party filed a motion for summary judgment. The court refused to grant full faith and credit to the New Jersey judgment and rendered summary judgment for defendant.

## 1. The 1971 New Jersey Divorce Decree

To ascertain whether the New Jersey court in 1971 acquired in personam jurisdiction over the nonresident defendant, Robert Fox, to award the plaintiff alimony and attorney's fees, it is necessary to determine if (A) New Jersey law authorized the acquisition of such jurisdiction in the manner of service of process employed, and (B) if there existed sufficient minimum contacts between the defendant and the forum state relevant to the cause of action to satisfy traditional notions of fair play and substantial justice. Accord, Mitchim v. Mitchim, 518 S.W.2d 362, 366 (Tex.1975); Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679, 681 (1968); Wright v. Wright, 114 N.J.Super. 439, 276 A.2d 878 (1971).

### A. New Jersey Law

It is undisputed that defendant was personally served outside the state of New Jersey. Defendant contends that according to New Jersey law, the summons and complaint must be served within the state in order to give the New Jersey court jurisdiction over the person of a nonresident defendant. We disagree. Certain New Jersey statutes, court rules, and decisions were before the trial court by stipulation, and, consequently are before us as well. Texas Rules of Civil Procedure, rule 184a. N.J.Ct.R. 4:4–4 specifies the methods of service to secure personal jurisdiction over a defendant. Subparagraph (a) of this

rule provides that service of a summons and complaint shall be made on an individual by delivering a copy of the summons and complaint in person. The rule does not require that this service must be accomplished within the state of New Jersey or that it cannot be served outside the state, and it, along with subparagraphs (c) and (d), assert jurisdiction of New Jersey courts over nonresident defendants under the long-arm theory. *Wright v. Wright*, 114 N.J.Super. 439, 276 A.2d 878, 879 (1971). We conclude, therefore, that under these New Jersey rules and decisions, proper service of process was made pursuant to New Jersey law when the defendant was personally served in the original divorce action within the state of Texas.

Defendant argues that the New Jersey court did not acquire in personam jurisdiction in view of the following statement appearing in the 1952 New Jersey superior court decision of *Kase v. Kase*, 18 N.J.Super. 12, 86 A.2d 587, 589 (1952): "Since an order for the payment of alimony is a personal judgment, process must be served within the State in order to give the court jurisdiction of the person of a non-resident." This statement in *Kase*, however, was not necessary to the decision, and it was not followed in the 1971 New Jersey superior court decision of *Wright v. Wright*, 114 N.J.Super. 439, 276 A.2d 878 (1971), wherein personal jurisdiction in a New Jersey court was obtained in an action for child support and alimony of a nonresident defendant by personal service on him in New York. We accept this later decision as declaring the New Jersey law in 1971, when the present divorce judgment was rendered.

### B. Minimum Contacts with New Jersey

◼ Since we conclude that the manner of service employed by plaintiff in the original divorce action satisfies New Jersey court rules, it is now necessary to determine if there existed sufficient minimum contacts between the defendant and New Jersey under the test laid down in *International Shoe Co. v. Washington*, 326 U.S. 310, 66

S.Ct. 154, 90 L.Ed. 95 (1945). Plaintiff contends that since the defendant has consistently made child support payments to her while she has remained a resident of New Jersey, and because the divorce decree awarding child support and alimony was entered pursuant to the separation agreement consummated by the parties while they were residents of New Jersey, the defendant has had sufficient contacts with New Jersey to satisfy traditional notions of fair play and substantial justice. We agree.

The contacts which the defendant had with New Jersey resemble those which existed in the recent Texas Supreme Court decision of *Mitchim v. Mitchim*, 518 S.W.2d 362, 366 (Tex.1975). In *Mitchim*, Arizona was the marital domicile of the parties from 1966 until the husband moved to Texas in 1971. The parties owned a home in Arizona and after moving to Texas the husband continued to make mortgage payments on the home. The suit for divorce was filed less than six months after the husband left Arizona. These contacts were held to fall within the ambit of personal jurisdiction constitutionally allowed. *Id.* at 367. Here New Jersey was the matrimonial domicile of the parties from 1955 until 1967; the parties executed a separation and property settlement agreement in New Jersey in 1968; and after moving to Texas in 1969, the defendant has sent child support payments to plaintiff in New Jersey. Plaintiff is still domiciled in New Jersey and New Jersey had a strong interest in providing for her support both at the time of the divorce and later. We conclude, therefore, that the New Jersey court in 1971 had in personam jurisdiction over the defendant to properly award alimony and attorney's fees to the plaintiff. *See Egbert v. Egbert*, 125 N.J.Super. 171, 309 A.2d 746, 748 (1973); Restatement (Second) of Conflict of Laws § 77, comment c (1971).

### 2. The 1973 New Jersey Judgment for Accrued and Unpaid Alimony

◼ Plaintiff contends that the district court erred in failing to extend full faith

and credit to the 1973 New Jersey judgment because the chancery court in New Jersey has continuing personal jurisdiction over a party to a divorce action, in which personal jurisdiction was originally obtained, to make subsequent orders concerning alimony. We agree.

The New Jersey statute which authorizes continuing jurisdiction of the chancery court provides:

> Pending any matrimonial action brought in this state or elsewhere, or after judgment of divorce or maintenance . . . the court may make such order as to the alimony or maintenance of the wife . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . . Orders so made may be revised and altered by the court from time to time as circumstances may require. N.J.S.A. 2A:34–23 (1952).

It is evident from this language that the 1973 New Jersey judgment for alimony arrearages is the type of decree contemplated to occur within the continuing jurisdiction of the New Jersey chancery court. This continuing jurisdiction is not limited to orders from the court which simply alter or modify a previously entered alimony decree. It also extends to a judgment of the chancery court for the payment of accrued and unpaid alimony ordered by a preceding divorce decree.

■ In New Jersey, alimony and child support installments do not become vested property rights when they become due because the court which rendered the alimony and child support decree has the continuing authority to modify its original order retroactively and thus reduce the amount of unpaid arrearages or extinguish the amount entirely. *Timmerman v. Timmerman*, 23 N.J.Misc. 52, 41 A.2d 24 (Dist.Ct.1945); *Kase v. Kase, supra*;[1] *cf. Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 686, 54 L.Ed. 905

(1910); *Lynde v. Lynde*, 181 U.S. 183, 21 S.Ct. 555, 556–57, 45 L.Ed. 810 (1901). The original divorce decree awarding alimony is, therefore, not final and not entitled to be accorded full faith and credit under U.S. Const. art. IV, § 1 until the past due installments are adjudged as a sum certain by the New Jersey court which rendered the original divorce decree as occurred here. *Whitehead v. Villapiano*, 16 N.J.Super. 415, 84 A.2d 731, 734 (App.Div.1951); *Gard v. Gard*, 150 Tex. 347, 241 S.W.2d 618 (1951); *Criteser v. Gaffey*, 222 S.W. 193 (Tex.Comm'n App.1920, holding approved); *Brazeal v. Renner*, 493 S.W.2d 541 (Tex.Civ.App.— Dallas 1973, no writ); *Ogg v. Ogg*, 165 S.W. 912 (Tex.Civ.App.—San Antonio 1914, no writ).

In oral argument before this court, defendant asserted that the plaintiff should have initiated the 1973 action for arrearage of alimony in Texas rather than in New Jersey. We cannot agree. Had plaintiff adopted this procedure, then under the above authorities, plaintiff would not have been entitled to relief because no final judgment in New Jersey would exist for enforcement by a Texas court.

■ Since we have concluded that under New Jersey law, the New Jersey chancery court has continuing power to modify or enforce its alimony orders, we must determine whether it also has continuing jurisdiction over the person of an absent defendant. We conclude that it does have such continuing jurisdiction, and, therefore, it is only necessary for the defendant to receive notice and the opportunity to be heard on the unpaid alimony application. *Kase v. Kase*, 18 N.J.Super. 12, 86 A.2d 587, 589 (1952). The controlling provisions setting forth the manner of service for written motions filed subsequent to the original complaint are N.J.Ct.R. 1:5–1 and 1:5–2. N.J.Ct.R. 1:5–1(a) provides: "In all civil actions . . . pleadings subsequent to

---

1. See *Duffy v. Duffy*, 19 N.J.Misc. 332, 19 A.2d 236, 240 (Ch. 1941); *Federbush v. Federbush*, 5 N.J.Super. 107, 68 A.2d 473, 474

(App.Div.1949). These cases support this proposition but were not before the trial court under Tex.R.Civ.P. 184a.

the original complaint, written motions . . . and other papers except a judgment signed by the clerk, shall be served upon all attorneys of record in the action and upon parties thereto appearing pro se . . . ." N.J.Ct.R. 1:5–2 provides: "Service upon a party of such papers shall be made as provided in rule 4:4–4 or *by registered or certified mail, return receipt requested,* to his last known address . . ." [Emphasis added.] It is undisputed here that the defendant received notice of the motion for judgment for alimony arrearage by certified mail, return receipt requested. Such notice conveys the requisite information and affords the defendant a reasonable time for appearance in order to comply with due process. Notice need not be served within the state when the proceeding is a part of an action previously commenced, in which jurisdiction of the person of the defendant has already been acquired. *Kase v. Kase, supra.*

■ Defendant argues that the district court correctly granted the defendant a summary judgment because the undisputed evidence shows that the defendant was entitled to an offset in an amount greater than the amount claimed by the plaintiff in New Jersey. This offset consisted of one-half of the net proceeds from the sale of the parties' home pursuant to the separation agreement of 1968 which was incorporated in the 1971 divorce decree. Defendant's contention is without merit. N.J.Ct.R. 4:7–1 provides: "A defendant, however, failing to set off a liquidated debt or demand, or a debt or demand capable of being ascertained by calculation, shall thereafter be precluded from bringing any action for such debt or demand which might have been so set off." The appropriate time and forum for defendant's assertion of his counterclaim was in 1973 when the plaintiff initiated her action for alimony arrearages. Although the defendant had reasonable notice of this action, he elected not to appear and, is therefore, precluded from asserting this compulsory counterclaim in a Texas court. *Accord, Zelek v. Brosseau,* 26 N.J. 501, 141 A.2d 17 (1958).

■ Defendant also contends that the judgment for arrearage is invalid on its face because the judgment for arrearages in the amount of $4,720 constitutes $30 weekly payments for a period of 157½ weeks rather than 117½ weeks, which is the period of time between the original divorce decree in April 1971 and the judgment for arrearages in July 1973. We cannot agree. It is possible that the New Jersey court considered arrearage due and unpaid under the parties' 1968 property settlement agreement before entry of the divorce decree. This the New Jersey court had jurisdiction to do.

■ Moreover, even if the judgment be considered *erroneous* on its face, it is not *void,* and, therefore, is entitled to full faith and credit. *Chandler v. Peketz,* 297 U.S. 609, 56 S.Ct. 602, 604, 80 L.Ed. 881 (1936); *Fauntleroy v. Lum,* 210 U.S. 230, 28 S.Ct. 641, 643, 52 L.Ed. 1039 (1908).

■ Furthermore, defendant argues that the New Jersey statute,[2] as it existed in April 1971, providing for alimony to the wife only, violates the equal protection clause to the Fourteenth Amendment of the United States Constitution, in that it discriminates invidiously against male parties to divorce decrees. We conclude that defendant has no standing to raise this contention because he agreed to the alimony payments embodied in the 1971 divorce decree. Moreover, this attack goes to the merits of the decree, and cannot be raised in this collateral proceeding. *Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216, 220 (1942); *see United States v. United Mine Workers of America,* 330 U.S. 258, 67 S.Ct. 677, 696, 91 L.Ed. 884 (1947); *Howat v. Kansas,* 258 U.S. 181, 42 S.Ct. 277, 280–

2. The New Jersey statute was amended effective September 12, 1971 to eliminate "wife" and substitute the word "parties."

81, 66 L.Ed. 550 (1922); *Martin v. Ben Davis Conservancy District*, 238 Ind. 502, 153 N.E.2d 125, 128 (1958); *Richardson v. Brunner*, 356 S.W.2d 252, 253 (Ky.Ct.App. 1962); *Norlanco, Inc. v. County of Madison*, 186 Neb. 100, 181 N.W.2d 119, 123 (1970); *Local 333B, United Marine Division of International Longshoremen's Ass'n v. Commonwealth Virginia Ferry Corp.*, 193 Va. 773, 71 S.E.2d 159, 165 (Supreme Ct.App. Va.1952); 1 Freeman on Judgments § 363 at 759–60 (1925); *see also Milwaukee County v. M. E. White Co.*, 296 U.S. 268, 56 S.Ct. 229, 233–35, 80 L.Ed. 220 (1935).

Accordingly, we reverse the judgment of the trial court and render judgment for plaintiff in the amount of $5,625.55, with interest from October 24, 1973 at six percent per annum. Tex.R.Civ.P. 434.

Reversed and rendered.