FORTUNE BENTLEY MEEKER, PLAINTIFF-APPELLANT, v.
LINCOLN VOGHT MEEKER AND AILEEN LUMLEY,
ALSO KNOWN as AILEEN LUMLEY MEEKER AND MRS.
L. V. MEEKER, DEFENDANTS-RESPONDENTS.

Argued October 10, 1967—Decided June 3, 1968.

*Mr. Milton T. Lasher* argued the cause for appellant.

*Mr. Robert P. Gorman* argued the cause for respondents (*Messrs. Clapp & Eisenberg,* attorneys).

The opinion of the court was delivered by

GOLDMANN, J. (temporarily assigned). This appeal challenges the rule laid down in *Floyd v. Floyd,* 95 *N. J. Eq.* 661

(*E. & A.* 1924), and *Morrissey v. Morrissey,* 1 *N. J.* 448 (1949), that our courts will not entertain a direct attack on the validity of a foreign divorce decree when, at the time the decree was rendered, neither spouse was a resident of this State.

Plaintiff, a *bona fide* resident of New Jersey, brought a declaratory judgment action in the Chancery Division seeking to have her marital status clarified and her husband's *ex parte* Mexican divorce declared invalid, joining him and his putative second wife, Aileen Lumley (Meeker), as defendants. They moved to dismiss the complaint for lack of jurisdiction over their persons and the subject matter of the action. The trial judge, applying the *Floyd-Morrissey* rule, granted the motion on the latter ground. The order was affirmed by the Appellate Division in a *per curiam* opinion.

In her appeal to this court plaintiff argues that application of the rule deprives her of due process, equal protection of the law, and the privileges and immunities guaranteed under the United States Constitution. Defendant moved to dismiss the appeal and decision thereon was reserved pending full argument.

I

The following facts are culled from the allegations contained in the complaint and affidavits filed by the parties.

Plaintiff and defendant Lincoln Voght Meeker, both then domiciled in India, were married in Bombay in July 1944. A son was born in November 1945. On August 8, 1950 the Meekers, then residing in Manila, P. I., entered into a separation agreement which obligated Meeker to support plaintiff and the son. The agreement provided that

"The Husband and the Wife shall continue to live separate and apart from each other, free from any interference, restraint and control by the other as fully as if she or he were sole and unmarried. For the rest of their lives neither party shall molest or interfere with the other in any way or seek to compel the other to cohabit with

him or her, or restrict or influence the free choice of domicile by the other."

Plaintiff was to have custody of the boy until he attained his majority.

It appears that plaintiff returned to Bombay and eventually became domiciled in London, England. Meeker continued to live in Manila and alleges that he later was domiciled in Singapore. The couple continued to live apart until the fall of 1957 when they were temporarily reconciled in London. Meeker left London in October 1957, promising to return in January 1958. He did not do so. Instead, he instituted divorce proceedings in the State of Chihuahua, Mexico. His residence or domicile in the interim is unclear.

Plaintiff was never served with process or notice of any kind in the Mexican divorce proceedings. She did not participate in them or submit to the jurisdiction of the Mexican court. Meeker obtained his divorce decree on March 17, 1958. On the very same day he married defendant Aileen Lumley in Arizona.

Meeker and his bride moved to Rio de Janeiro, Brazil, arriving there April 28, 1958. Plaintiff came to New Jersey from London in the fall of 1958, and has resided here ever since.

In her complaint and supporting affidavit plaintiff alleged that Meeker's legal residence at the time of the 1958 Mexican divorce proceeding was and continued to be the Williamsburg Apartments in Westfield, N. J., where his mother has lived since April 1958. Plaintiff represented that defendant had declared that place to be his legal residence when he applied to the United States Consul General at Sao Paulo, Brazil, to be registered as a United States citizen. Further, in his application to the New Jersey Director of Motor Vehicles for a driver's license in April 1958 he had certified that he resided at the Williamsburg Apartments—a representation he repeated when he renewed his driver's license in March 1961 and again in March 1964.

Defendants, on the other hand, presented several affidavits from themselves and others indicating that at no time was either of them domiciled or resident in New Jersey.

Plaintiff initially sought to effect service by having the sheriff hand a copy of the summons and complaint to Meeker's mother at her Westfield apartment. Defendants moved to dismiss the complaint for lack of jurisdiction over their persons and insufficiency of process and service. The motion was denied but the service set aside as insufficient. Plaintiff then obtained an order for publication and substituted service. Defendants moved to vacate the order and to dismiss the complaint with prejudice on the grounds of lack of jurisdiction over their persons and over the subject matter. On the basis of the affidavits on file the trial judge found there was no genuine issue of any material fact, it "palpably appearing" that none of the parties was domiciled in New Jersey when the Mexican decree was rendered. In light of "the settled law" he concluded that since plaintiff's action was a direct attack on the Mexican divorce and neither party had been domiciled in this State at the time the decree was entered, the court was without jurisdiction over the subject matter.

Plaintiff raised no constitutional issue at the trial level. In the Appellate Division, however, she asserted her present constitutional challenge to the *Floyd-Morrissey* rule. In its *per curiam* affirmance the court first stated that the trial judge was justified in holding that the affidavits palpably established the absence of any genuine issue with respect to the material fact of absence of domicile in New Jersey by either plaintiff or her husband at the time of the Mexican divorce. It rejected plaintiff's contention, not renewed before this court, that the instant case is distinguishable from the *Floyd* and *Morrissey* precedents because it concerns a foreign country decree rather than a sister state judgment. The rationale of those cases, it said, did not depend upon solicitude for the integrity of judgments of sister states as

distinguished from foreign sovereignties; rather, jurisdiction was found wanting as a matter of public policy. :

As for the constitutional challenge, the Appellate Division observed that since plaintiff had not put that claim in issue below, it was not available on appeal. The court nonetheless went on to say that the claim was without merit because the rule in question did not, as plaintiff asserted, arbitrarily discriminate between prospective suitors on the basis of when they became residents of New Jersey; even a nonresident might directly attack a foreign divorce judgment if either of the marital partners was domiciled here when that judgment was entered.

## II

Defendants advance two grounds in their motion to dismiss this appeal: (1) plaintiff's failure to raise the constitutional question before the trial court, and (2) the absence of a substantial constitutional question.

This court may, but need not, accept a constitutional issue not raised below. *Lettieri v. State Board of Medical Examiners,* 24 *N. J.* 199, 206 (1957). Exceptions to this rule are made when the questions raised on appeal go to the jurisdiction of the court below, or when they relate to matters of great public concern or important questions of public policy. *Fischer v. Bedminster Tp.,* 11 *N. J.* 194, 201 (1952) ; *Morin v. Becker,* 6 *N. J.* 457, 460 (1951) ; *Roberts Electric, Inc. v. Foundations & Excavations, Inc.,* 5 *N. J.* 426, 430 (1950). The court will hear such questions where "it is manifest that justice requires consideration of an issue central to a correct resolution of the controversy and the lateness of the hour is not itself a source of countervailing prejudice, * * *." *In re Appeal of Howard D. Johnson Co.,* 36 *N. J.* 443, 446 (1962).

Plaintiff risked possible dismissal of this appeal by failing to heed prior judicial warnings as to the proper procedure to be followed when the constitutional ground asserted may be

found to be insubstantial. Thus, in *Tidewater Oil Co. v. Mayor, etc., of Borough of Carteret,* 44 *N. J.* 338 (1965), we observed that

> "* * * in any case where the right to appeal from the Appellate Division is not clear beyond doubt, the proposed appellant should petition for certification, outlining fully his claim to an appeal as of right, as well as any other appropriate reasons indicating why this court should allow further review even if it believes that the case does not present a sufficient constitutional question * * *. If a proper constitutional question does appear, the rules provide that 'certification shall be granted.' *R. R.* 1:10–4(e). If it does not, an appeal may be allowed through certification for other reasons. In no case will a litigant suffer by falling between the millstones and this court will be better able to fulfill its proper function." (at *page* 344)

■ We see no need, however, of passing upon plaintiff's constitutional challenge. The question of a direct attack on a foreign divorce in a case where neither spouse was a New Jersey resident at the time of the decree involves a jurisdictional doctrine supposedly dictated by significant policy considerations. Review of that policy is a matter of sufficient importance to warrant our accepting the appeal as though a petition for certification had been granted, so that we may reappraise the judicially imposed rule of *Floyd-Morrissey*. *Cf. Amelchenko v. Freehold,* 42 *N. J.* 541, 545 (1964); *State v. De Meo,* 20 *N. J.* 1, 5 (1955); *State v. Greenberg,* 16 *N. J.* 568, 572 (1954); *Starego v. Soboliski,* 11 *N. J.* 29, 32 (1952).

### III

■ The doctrine which plaintiff challenges was articulated in *Morrissey v. Morrissey,* 1 *N. J.* 448 (1949), where the court, relying on *Floyd v. Floyd,* 95 *N. J. Eq.* 661 (*E. & A.* 1924), said:

> "* * * A complainant has no legal status in this State to attack the validity of a divorce decree of a sister state in a direct proceeding instituted for that specific purpose when at the time

the decree of divorce was granted neither the complainant' nor the other spouse was a resident of this State." (at *page* 452)

In *Morrissey* neither spouse was domiciled in New Jersey at the time the wife went to Nevada and secured a divorce. She immediately married a Sidney Steiker and had a child by him. She later reconciled with Morrissey and was living with him when he brought his New Jersey action to annul her marriage to Steiker by vitiating the Nevada decree. Her counterclaim sought the same relief, leaving Steiker as the only defendant. The Chancery Division concluded that the Morrisseys were domiciled in Massachusetts at the time of the Nevada divorce and so had no standing to challenge the validity of that decree in our courts. This court affirmed, asserting that our "settled policy" was not to entertain a direct attack upon the judgment of a sister state in the circumstances.[1]

The complainant in *Floyd* sought to set aside a Nevada divorce alleged to have been fraudulently procured by his wife while both were domiciled in Pennsylvania. She had come to live in New Jersey immediately after obtaining her decree, and was served here. The vice-chancellor denied her motion to strike the bill of complaint. Our former Court of Errors and Appeals reversed, holding that complainant had no legal status to bring his action. The court advanced three reasons for its conclusion: (1) since the marital domicile was in Pennsylvania and the wife's domicile followed that of her husband, there was no *res* in New Jersey which could properly be dealt with by the Court of Chancery; (2) the wife not being domiciled here at the time of her Nevada decree, there was no fraud on the New Jersey courts upon

---

[1] The *Morrissey* court said that, even assuming jurisdiction, relief should be denied because both parties were represented by counsel and participated in the Nevada proceedings. The Morrisseys were therefore bound by the Nevada court's determination that it had jurisdiction of the subject matter and of the parties.

which to ground jurisdiction, and finally, (3) to entertain the action could convert New Jersey into "a mecca for disgruntled divorcees."

We find no continuing judicial vitality in the jurisdictional policy laid down by *Floyd-Morrissey.*

■ In its theory of a marital *res, Floyd* reflected the once firmly held notion that a wife cannot maintain a domicile separate and apart from her husband except in extraordinary circumstances. Today, domicile in fact on the part of either party offers a sufficient jurisdictional basis to deal with the question of marital status. See *Payne v. Payne,* 2 *N. J. Super.* 270, 274–275 *(Ch. Div.* 1948); *Lister v Lister,* 86 *N. J. Eq.* 30, 38 *(Ch.* 1915). Certainly, at least in the circumstances here present, plaintiff was privileged to exercise a free choice of domicile. She did so by coming to this State to live.

The absence of fraud upon our courts, the second element mentioned in *Floyd,* should not preclude a New Jersey determination concerning the Mexican divorce. If the *ex parte* decree constituted a fraud on plaintiff, and she has genuinely assumed a New Jersey domicile, our courts have a strong enough interest in her marital status to merit intervention. *Cf.* 69 *Harv. L. Rev.* 1497, 1498 (1956); and see *DeYoung v. DeYoung,* 159 *P. 2d* 102, 107 *(D. Ct. App.* 1945), reversed on other grounds 27 *Cal. 2d* 521, 165 *P. 2d* 457 *(Sup. Ct.* 1946).

■ This leaves for consideration the third of the reasons advanced in *Floyd,* that New Jersey will become "a mecca for disgruntled divorcees" if declaratory judgments are permitted even though neither spouse was domiciled here at the time of the foreign decree. The possible potential for such a development is dissipated if we adopt a choice-of-law rule designed to prevent forum shopping by spouses intent on upsetting the foreign decree. Our courts need only apply the substantive law of the attacking spouse's domicile at the time of the decree. *Cf.* 69 *Harv L. Rev.* 1497, 1498 (1956).

A spouse would then gain no advantage by choosing New Jersey as a forum; his status would be determined as though he had remained in his prior domicile. See Comment, "New York Approved Mexican Divorces: Are They Invalid in Other States?" 114 *U. Pa. L. Rev.* 771, 776 (1966); *Ball v. Cross*, 231 *N. Y.* 329, 132 *N. E.* 106, 107, 39 *A. L. R.* 600 (*Ct. App.* 1921). We adopt such choice-of-law rule as a practical and effective approach in cases like the present one.

■ Moreover, the prospect of disaffected divorcees using our courts does not seem too imposing when considered in the frame of reference of sister state divorce decrees. Recognition is accorded such judgments under the full faith and credit clause, and they may now be questioned only on jurisdictional grounds. See *Williams v. North Carolina* (I), 317 *U. S.* 287, 63 *S. Ct.* 207, 87 *L. Ed.* 279 (1942); Griswold, "Recognition of Divorce Decrees," 65 *Harv. L. Rev.* 193, 223 (1951). That being so, a spouse would no longer derive significant substantive benefits by attacking a sister state decree in one forum rather than another.

And since many jurisdictions permit declaratory judgments regarding marital status—see *Borchard, Declaratory Judgments* (2d ed. 1941), 479—the likelihood of spouses seeking out New Jersey is substantially diminished. To the extent that differences remain among state policies in recognizing sister state divorces, application of the choice-of-law rule just mentioned should prevent wholesale influx into our courts for declaratory judgments.

■ Yet another factor deserves consideration. Since, in our view, jurisdiction to grant a declaratory judgment as to marital status is grounded on the domicile of a party, New Jersey must in every case make a determination of the existence of such domicile. Any attempt to feign domicile in order to obtain a declaratory judgment here will be subject to our careful judicial scrutiny.

## IV

Although our courts have heretofore adhered to the *Floyd-Morrissey* rule where a direct attack has been leveled against a foreign decree, they have not hesitated to act where some other relief is demanded, the attack on the foreign decree being designated as a "collateral" matter. The *Morrissey* court expressly recognized the propriety of their doing so when it said:

"But where the validity of such a decree is collaterally attacked, either in defense or otherwise, the issue may be determined despite the fact that at the time of the divorce decree neither party was domiciled in this State. Under these circumstances our courts may examine the judgment to ascertain whether it is invalid either upon the ground of fraud or lack of jurisdiction. * * *" 1 *N. J.*, at *page* 452.

Collateral attacks have occurred in a variety of circumstances and have to that extent eroded the initial judicial reluctance to assess foreign divorce decrees involving non-domiciliaries. Thus, there have been collateral attacks incidental to suits for support and separate maintenance, *Lea v. Lea*, 18 *N. J.* 1, 6 (1955), affirming 32 *N. J. Super.* 333 (*App. Div.* 1954); *Payne v. Payne*, above, 2 *N. J. Super.*, at *pages* 274–276; *Robins v. Robins*, 103 *N. J. Eq.* 26 (*Ch.* 1928); suits for divorce, *Fraser v. Fraser*, 77 *N. J. Eq.* 205 (*Ch.* 1910), affirmed 78 *N. J. Eq.* 296 (*E. & A.* 1911); *Shapiro v. Shapiro*, 13 *N. J. Misc.* 788, 180 *A.* 434 (*Ch.* 1935); bigamy prosecutions, *State v. Najjar*, 1 *N. J. Super.* 208 (*App. Div.* 1949), affirmed 2 *N. J.* 208 (1949); proceedings to determine a widow's right to social security payments, *Sherman v. Federal Security Agency*, 166 *F.* 2d 451 (3 *Cir.* 1948); and proceedings for specific performance of a land contract, *Meade v. Mueller*, 139 *N. J. Eq.* 491 (*Ch.* 1947). See 12A *New Jersey Practice* (*Herr-Lodge, Marriage, Divorce and Separation*) (3d ed. 1963), § 2567, *p.* 32; and Comment, 114 *U. Pa. L. Rev.* 771, 772, *n.* 9, for other possible modes of collateral attack.

The availability of our courts to a plaintiff who, in the course of seeking relief of any of the types just described, collaterally calls into question the validity of her spouse's foreign divorce, blunts the thrust of the *Floyd-Morrissey* rule. For example, as a domiciliary of New Jersey plaintiff could have obtained a judicial declaration of her marital status merely by suing for divorce; the question of her husband's prior *ex parte* divorce would inevitably arise and be determined in such a proceeding. We perceive no real reason for maintaining the distinction which presently exists between a direct attack upon a foreign divorce where neither party was domiciled here at the time the decree was obtained, and a collateral attack. As long as plaintiff's domicile is established to the satisfaction of the court, and the law to be applied is the law of her domicile at the time the decree was entered, justice will best be served by overruling the rule laid down in *Floyd* and *Morrissey*.

## V

There remains the question of service. Plaintiff alleges that Meeker's true residence is in New Jersey, specifically, at the Williamsburg Apartments in Westfield. Defendant claims that neither he nor the present Mrs. Meeker has ever been domiciled or resident in this State.

Though we overrule the *Floyd-Morrissey* doctrine and determine that the trial court had jurisdiction over the subject matter, we do not hold that such jurisdiction will support the order for publication and substituted service entered at plaintiff's instance. (The trial judge apparently considered the service valid but then went on to dismiss the complaint for lack of subject-matter jurisdiction.) An action to adjudge the existence or nonexistence of marital status involves a right personal to the parties. It can be entertained only if there is such service as would support a judgment *in personam*. To permit resolution of that right by service under *R. R.* 4:4–5 (service on absent defendants), rather

than by personal service under *R. R.* 4:4-4, would, in our view, amount to a denial of due process.

It will be recalled that plaintiff first sought to effect service through Meeker's mother at her Westfield residence and that defendants at once moved to dismiss the complaint for lack of jurisdiction over their persons and insuifficiency of process and service. The trial judge determined that motion on the basis of the counter-affidavits on file, and nothing more. He concluded that since plaintiff's declaratory judgment action came within the definition of "matrimonial actions" in *R. R.* 4:93-2, "due and proper process must comply with the provisions of *R. R.* 4:96-1 *et seq.*, and that failure to do so extends no jurisdiction under which the marital status of the parties herein can be adjudicated." Defendants' motion was therefore granted on that ground alone. The complaint was not dismissed, with the result that plaintiff then resorted to an order for publication and substituted service.

The order vacating service of process on Meeker's mother was interlocutory and not appealable unless by leave of court. The correctness of that order should be resolved now in the interest of conserving judicial time. Since there clearly was a factual dispute as to defendant Meeker's actual residence, that question should not have been resolved on conflicting or disputed affidavits, but only after a full hearing. There must be an opportunity for cross-examination.

Accordingly, we reverse and remand for further proceedings in accordance with this opinion.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, GOLDMANN, SCHETTINO and HANEMAN—7.

*For affirmance*—None.