103 N.J. Super. 316 (1968)
247 A.2d 156
MARY FORIS, PLAINTIFF,
v.
NICHOLAS FORIS, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided October 22, 1968.
*317 Mr. Morgan E. Thomas for plaintiff.
Mr. Lawrence M. Perskie for defendant (Messrs. Perskie & Neustadter, attorneys).
HORN, J.S.C.
This is a motion to dismiss on the ground that jurisdiction over defendant is lacking.
Plaintiff brought an action to enjoin her husband from proceeding with his divorce action in the State of Nevada, on the ground that the courts of said state did not have jurisdiction over the subject matter, neither of the parties being domiciled there. Plaintiff never entered an appearance in the foreign action.
A verified complaint and order to show cause containing appropriate restraint were issued and served by registered mail upon defendant in Nevada, pursuant to the terms of said order. He received these papers four days before a *318 divorce decree in his favor was entered by the Nevada court. He failed to heed the restraint against proceeding with that action on the advice of his Nevada counsel. Defendant returned to New Jersey two days after the decree was handed down.
Defendant cites Meeker v. Meeker, 52 N.J. 59 (1968), as support for his position that the service in Nevada was ineffective. Meeker presents a question as to whether an absent New Jersey domiciliary may be served by registered mail, return receipt requested, as permitted by R.R. 4:96-4 and R.R. 4:4-5, so as to constitute due process upon a defendant in an action enjoining him from obtaining a foreign decree of divorce. That case was an action to obtain a declaratory judgment as to the existence or nonexistence of a marriage.
In Meeker the court stated:
"An action to adjudge the existence or nonexistence of a marital status involves a right personal to the parties. It can be entertained only if there is such service as would support a judgment in personam. To permit resolution of that right by service under R.R. 4:4-5 (service on absent defendants) rather than by personal service under R.R. 4:4-4 would, in our view, amount to a denial of due process."
Defendant relies primarily on this language for his contention that this court never obtained jurisdiction over him.
As demonstrated hereinafter, our decisions have for many years recognized the validity of the kind of service pursued in the present case. Our rules of procedure, as hereinafter shown, were obviously fashioned on the principles enunciated by our case law in recognition of such service outside the State.
However, the quoted language of Meeker is such as reasonably to raise the question of the validity of such service.
R.R. 4:93 to 4:98, inclusive, apply to matrimonial actions. R.R. 4:93-2 defines the term "matrimonial actions" as "all actions brought under the inherent jurisdiction of the court for the annulment of marriage, for the protection of the *319 status of marriage by injunction or otherwise, and for the confirmation or otherwise of the validity of marriage by declaratory judgment * * *." R.R. 4:85-3, which provides for service on order to show cause in lieu of summons, in part states, "Service [of the copy of the order to show cause] may be made outside the State, by mail, publication or otherwise, all as the court may by order direct, providing the nature of the action is such that the court may thereby acquire jurisdiction."
A finding of fact has already been made in this case that defendant's domicile remained in this State at all times. None of the cases which have upheld such service is cited or discussed in any manner in Meeker. Notably absent from discussion was Kempson v. Kempson, 58 N.J. Eq. 94 (Ch. 1899), affirmed 63 N.J. Eq. 783 (E. & A. 1902).
In Kempson complainant wife sought to enjoin defendant husband from proceeding with a suit he had commenced in one of the courts of the State of North Dakota for a divorce against her. Upon exhibiting of the complaint and affidavits, the vice-chancellor issued an order to show cause containing a restraint similar to that in the instant case, and directed that the order be served upon defendant whereever he might be found.
Defendant proceeded with the prosecution of the foreign suit, obtained a decree of divorce, and then attacked the jurisdiction of the New Jersey court to hold him in contempt for the reasons, among others, that "defendant was not served with either the order to show cause or the injunction, and that such notice as he actually had of it was not sufficient to place him in contempt for failure to obey it"; also, "jurisdiction of his person was not obtained by service of process within the state, and hence service of either the order or the writ, or both, out of the State was a mere nulity, because the court had acquired no jurisdiction to make any order against him."
The vice-chancellor (at page 309) held that in accordance with precedents followed by our courts,
*320 "* * * proceedings with regard to the validity or dissolution of marriage are in rem. They actually operate upon the matter; they affirm, constitute or dissolve the marriage relation * * *. The difference between the present suit and one for divorce is that the object of the one is to preserve and of the other to destroy marital relation; and I think that the one for preservation is quite as clearly within the spirit and reason of the rule laid down by Chancellor Zabriskie [in Addington v. Addington, (Coddington v. Coddington) 20 N.J. Eq. 263 (Ch. 1869)] and Mr. Justice Adams in Harvey v. Harvey [Hervey v. Hervey], 56 N.J. Eq. 424 (E. & A. 1897) as that for the destruction of the relation."
The rule established in Kempson was:
"It seems to me that where the spouses are both domiciled in this State, and one of them seeks to destroy the marriage relation by a suit in a foreign jurisdiction, the right of this court at the instance of the one who desires to preserve it against the other, to protect the marriage relation by its extraordinary process, although it is unable to make service of its jurisdictional process within the State, is quite as clear as it would be to use such extraordinary process against a party who was threatening to inflict irremediable mischief on ordinary visible property situate within the State, although it may be powerless to serve him with jurisdictional process within the State. The spouse who was domiciled in the State and who fears irremediable mischief to the marriage relation is as much entitled to judicial protection as the owner of ordinary property situate within the State." (at p. 310)
In the opinion affirming this holding, the Court of Errors and Appeals, stated:
"It may be regarded as settled, by a long train of adjudications, culminating in Atherton v. Atherton, 181 U.S. 155, 21 S.Ct. 544, 45 L.Ed. 794 that the state wherein are the matrimonial domicile and also the domicile of the complaining spouse, has the right to confer upon the courts jurisdiction over the matrimonial status, no matter where the other spouse may be. In such circumstances the matrimonial status is deemed to have a situs within the State, resembling for the time being, the situs of land, and the proceeding respecting that status is quasi in rem. This power is recognized and upheld by foreign states, provided the state exercising it has made and carried out reasonable provision for giving to the defendant notice and an opportunity to be heard." (63 N.J. Eq., at p. 784)
*321 Finally, the court said:
"In the case now before us, the matrimonial domicile and the domicile of the complainant being actually within the State when the bill was filed, the court had the right to proceed to final decree against the defendant, even though he remained absent from the State, and therefore to require his obedience to the injunction, of which he had notice."
Meeker was an action brought only to determine whether the marital status existed. In the case at bar the action was brought to preserve the marital relation. A declaratory judgment neither creates, destroys nor preserves; it merely clarifies. So far as it clarifies it affects personal rights. But in such a case there is no res. In overruling Morrissey v. Morrissey, 1 N.J. 448 (1949) and Floyd v. Floyd, 95 N.J. Eq. 661 (E. & A. 1924), Meeker made it clear that the court could determine the marital status, if either party were domiciled in the State. Additionally, Meeker held that fraud on our courts was not a prerequisite to the entertainment of such action.
In Perlman v. Perlman, 113 N.J Eq. 3 (Ch. 1933), defendant husband went to Nevada for the sole purpose of obtaining a divorce against his wife, having no intention to remain in Nevada and making it his home. He proceeded to obtain the divorce in that jurisdiction despite an injunction obtained by the wife in New Jersey prohibiting him from pursuing his cause of action in Nevada. He admitted receiving the New Jersey order restraining and enjoining him in Nevada. The court held:
"Where one of the parties seeks to destroy the marriage relation by a suit in a foreign jurisdiction, the right of this court, at the instance of the one who desires to preserve it against the other, to protect the marriage relation by its extraordinary process although it is unable to make service of its jurisdictional process within the state is clear. The spouse who is domiciled in the state, and who fears an irremediable mischief to the marriage relation, is as much entitled to judicial protection as the owner of ordinary property situate within the state, and it is well settled that it is a matter of no consequence how the fact of the issuing of the *322 injunction is brought to the knowledge or the notice of the defendant * * *."
See discussion of the New Jersey rule in Annotation, "Enjoining Divorce Suit in Another State," 128 A.L.R. 1467, 1477 (1955), as supplemented in Annotation, "Injunction - Foreign Divorce Action," 54 A.L.R.2d 1240, 1252 (1955).
As already stated, this court found as a fact that defendant Dr. Foris was a domiciliary of New Jersey. Had it been found that he had effectively become a Nevada domiciliary at the time he received notice and sought his divorce, then the court would have been obliged to find that the Nevada divorce was valid and he could not be punished for contempt. Brown v. Brown, 24 N.J. Super. 198 (App. Div. 1953).
From the time of Kempson in 1899 (and even before it) to Famely v. Famely, 90 N.J. Super. 128 (App. Div. 1966), our courts have assumed that service as was made in the instant case was valid and sufficient for the purpose of acquiring jurisdiction to make a determination as to the validity of the foreign decree, and to compel defendant to abide by the court's judgment.
The view taken in these cases and the permissiveness of our rules of civil procedure appear to be in accord with the holding of the United States Supreme Court in Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The court there held, in language which leaves no room for interpretation, that:
"* * * the authority of a state over one of its citizens is not terminated by the mere fact of his absence from the state. The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties. * * * That relationship is not dissolved by mere absence from the state. * * * One such incidence of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him." See discussion in Goodrich on Conflicts, "Jurisdiction of Courts," § 73, p. 118 (1964).
If personal service within this State in a divorce action is not required, the public or State's interest in preserving *323 the marriage should not be encumbered by requiring such service in a case such as the one at bar.
In the commercial world, the complications of obtaining jurisdiction over an absent or out-of-state defendant have diminished to a point where service by mail is permissible on a showing of "minimum contact" or "substantial connection." All through these cases there runs the concept of compliance with traditional notions of fair play and substantial justice. International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1946); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1953); Roche v. Floral Rental Corp., 95 N.J. Super. 555 (App. Div. 1967); Roland v. Modell's Shoppers World of Bergen County, 92 N.J. Super. 1 (App. Div. 1966); Hoagland v. Springer, 75 N.J. Super. 560 (App. Div. 1962).
Reference to the "long-arm" cases demonstrates the policy of our State to obtain, within constitutional limits, jurisdiction over a party defendant in the commercial world in the interest of protecting its citizens. If it is in the State's interest in the commercial sphere to protect its citizens by diminishing the harsh and arbitrary effect of state boundaries, it is of less importance in the area of law now before us. Certainly there is no violation of traditional notions of fair play and substantial justice.
I must conclude, therefore, that the court in Meeker purposely did not cite any of the Kempson cases because it was not intended to overrule the precedents thereof. Additionally, Meeker made it abundantly clear that not only did it not consider that the case before it was a "matrimonial action", it also made it clear that there had never been a matrimonial domicile in New Jersey.
Consequently, the holding of Meeker is not applicable to the case at bar. The service of the complaint and order to show cause in this case constituted a good and valid service upon defendant by virtue of which jurisdiction over him was acquired. R.R. 4:85-1 et seq.