. PER CURIAM.
The plaintiff filed her complaint in the Circuit Court of Escambia County alleging that she was the administratrix of the estate of James Fletcher Hamilton, deceased, a seaman who was employed by defendant and who came to his death as a result of defendant’s negligence while so employed. Failing to secure jurisdiction over defendant by personal service, the plaintiff amended her complaint alleging that defendant was engaged in business in Florida in that he operated a tugboat for hire which he caused to tow barges on the waters of Es-cambia County, Florida, and to be docked therein. The amended complaint further alleged that this suit arose out of transactions connected with or incident to this business.
As amended the complaint alleged that defendant, a resident of the State of Louisiana, operated a tug upon the waters of Florida and as an incident to said operation, while the tug was docked in Florida, defendant negligently failed to provide plaintiff’s decedent with a safe place to work, as a result of which decedent met his death. Service on defendant was attempted by mailing copy of the process to defendant in Louisiana and the Secretary of State of the State of Florida. Defendant moved to quash the affidavit of service on the ground that the complaint showed that the activity of defendant alleged to constitute doing business in Florida was navigation of vessels upon navigable waters. The court overruled the motion, holding that service had been properly made as required by § 47.162, Florida Statutes, F.S.A., and that said statute does not contravene the Constitution of the United States, either by attempting to condition the exercise of a federal privilege upon appointment of an agent *264 for acceptance of service of process or by imposing a burden upon interstate commerce.
Defendant filed an answer denying that he did business in Escambia County, denying that he had appointed the secretary of state as his agent for service of process, denying that the cause of action arose out of transactions connected with any business he was carrying on in the State of Florida and alleging that to require him to appear in a Florida court would impose a burden upon interstate commerce and that the court had not acquired jurisdiction of his person. Reserving all objections to jurisdiction, the answer also denied the material allegations of the complaint as to negligence. An amendment to conform to the evidence at the trial was allowed to add the affirmative defense of contributory negligence.
Trial before a jury resulted in a verdict and judgment for the plaintiff. Defendant again moved to dismiss the cause for lack of jurisdiction over his person, a motion for judgment notwithstanding the verdict and a motion for new trial were proffered and denied, the court adhering to its previous ruling that § 47.162, Florida Statutes, F.S.A., does not contravene the Constitution of the United States. This appeal is from the judgment so entered.
We are first concerned with the question of jurisdiction. The Supreme Court has jurisdiction because the trial court passed directly on the constitutionality of the applicable statute. The court said:
“ * * * that jurisdiction over the person of the defendant was properly acquired under Section 47.162, Florida Statutes, and that such statute is not in contravention of the Constitution of the United States since in the opinion of the court it does not constitute any burden upon interstate commerce nor does it attempt to condition the exercise of a federal privilege upon the acceptance or appointment of an agent for acceptance of process, * * (Art. V, § 4(2), Const, of Florida, F.S.A.)
The applicable statute, § 47.162, Florida Statutes, F.S.A., which appellant says is in violation of the Constitution of the United States, provides in part:
“(1) The operation, navigation or maintenance by a nonresident or nonresidents of a boat, ship, barge or other watercraft in the state, either in person or through others, and the acceptance thereby by such nonresident or nonresidents of the protection of the laws of the State for such watercraft, or the operation, navigation or maintenance by a nonresident or nonresidents of a boat, ship, barge or other watercraft in the state, either in person or through others, other than under the laws of the state, shall be deemed equivalent to an appointment by each such nonresident of the secretary of state, or his successorin office or some other person in his office during his absence he may designate, to be the true and lawful attorney of each such nonresident for service of process, upon whom may be served all lawful process in any suit, action or proceeding against such nonresident or nonresidents growing out of any accident or collision in which such nonresident or nonresidents may be involved while, either in person or through others, operating, navigating or maintaining a boat, ship, barge, or other watercraft in the state; and such acceptance or such operating,,navigating or maintaining in the state of such watercraft shall be a signification of each such nonresident’s agreement that any such process against him which is so served shall be of the same legal force and effect as if served on him personally.”
Although this court has not previously considered the validity of § 47.162, Florida Statutes, F.S.A., similar statutes have been upheld against constitutional challenges by the federal district courts. Goltzman v. *265 Rougeot (D.C.La.1954), 122 F.Supp. 700; Tardiff v. Bank Line, Ltd. (D.C.La.1954), 127 F.Supp. 945, and Frase v. Columbia Transportation Company (D.C.Ill.1957), 158 F.Supp. 858. These cases are significant because the situations from which they arise are so similar to the case at bar.
Appellee contends that § 47.162, Florida Statutes, F.S.A., being a corollary to the nonresident motorist statute, has properly been ruled to be in harmony with due process. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091. Appellant takes the position that said nonresident motorist statutes were principally held valid out of recognition of the power of the state to exclude nonresidents from its highways,
“And, having the power so to exclude, the state may declare that the use of the highway by the nonresident is the equivalent of the appointment of the registrar as agent on whom process may be served.” Hess v. Pawloski, supra.
From these objections appellant reasons that the validity of § 47.162 depends upon the power of the state to deny nonresidents the privilege of operating watercraft on navigable waters within the boundaries of the state and that since the federal government has the paramount power to control the operation of vessels on navigable waters of the 'United States, the state cannot exclude ships from its navigable waters, thus it cannot regulate the use of the same in this manner. We believe appellant’s argument is overcome by the reasoning in Tardiff v. Bank Line, supra, as follows:
“Viewed realistically, therefore, the constitutionality of the nonresident motorist statutes is not predicated on the nonresident’s consent to be sued, im-' plied from its use of the state’s highways. The constitutionality of these statutes rests on the right of a state under its police power to protect its citizens, and others within its borders, by' providing a forum, in which actions arising out of accidents on its highways may be litigated. Such statutes do not violate due process for they do not offend ‘ “traditional notions of fair play and substantial justice.” ’ International Shoe Co. v. State of Washington, supra, 326 U.S. 316, 66 S.Ct. 158, 90 L. Ed. 95. No valid distinction can be drawn between a nonresident motorist statute and a nonresident vessel owner statute. The state’s right and duty to provide protection for persons and property on its navigable waters are no less important than its right and duty to provide like protection for persons on its highways. * * * ”
We agree that § 47.162, Florida Statutes, F.S.A. is responsive to a valid exercise of the police power of the State of Florida and does not operate as a burden upon interstate commerce.
It is also true that from an examination of the record herein, it is apparent that the appellant had the requisite “minimum contacts” with the forum so that the maintenance of this suit is not a denial of due process and does not offend “traditional notions of fair play and substantial justice” as such concepts are defined in International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95.
Appellant next contends that if valid § 47.162, Florida Statutes, F.S.A., is inapplicable to the facts of this case. The record reveals that appellant as owner and operator of the tugboat “Nellie” at the time of the accident was engaged in the business of towing barges- on- navigable waters from Corpus Christi, Texas, to St. 'Marks, Florida. In April of 1961, appellant’s tug “Nellie” towed two barges of jet fuel from Baton Rouge, Loitisiana, to Sherman Field, Pensacola, Florida. While'the barges were discharging their fuel, the tug was taken to the Runyon Dry Docks for minor repairs-. On April 4, 1961, after the cargo was discharged from the barges, they were towed by the tug “Nellie” to the Jefferson Street *266 Dock in Pensacola. The tug was then moored in Pensacola pending further orders. From April 4 to April 9, the day Hamilton’s body was found, the tug remained in the Pensacola harbor area as directed by appellant, its owner. The appellant testified, as was his custom, that he made the trip from New Orleans to Pensacola by car arriving in Pensacola on March 30 or 31. Appellant remained in the vicinity of Pensacola until April 9, supervising the dry dock repair of the tug and directing the operation of the tug. The accident took place at a time when the tug “Nellie” was being operated and maintained by the appellant within the State of Florida. Under this state of facts § 47.162, Florida Statutes, F.S.A., was applicable and pointed the situs of this action.
The third point raised by the appellant may be stated as follows: “Does the evidence considered in the light most favorable to the plaintiff [appellee] make a prima facie showing that negligence on the part of the defendant [appellant] played any part in causing the death of the plaintiff’s decedent?”
The record shows that James Fletcher Hamilton was the relief captain aboard the tugboat “Nellie” which was owned and operated by the appellant. The “Nellie” with Hamilton aboard first took the barges to Sherman Field, Florida, then towed them empty to the Jefferson Street dock in Pensacola, Florida, where they were tied up for the time being. The two barges were secured to each other and the starboard side of the inboard barge was tied to the dock with about 2i/¡ feet of slack in the mooring lines to permit the barges to ride up and down with the tide. It is undisputed that the barges were so moored at the Jefferson Street dock from 7:30 P.M. on April 4, 1961, until after decedent’s body was found on April 9, 1961.
Although the testimony was conflicting, evidence was presented from which the jury could have found that the tug “Nellie” was secured to the outboard side of the barges from the evening of April 4, until the morning of April 6. James Fletcher Hamilton was last seen alive on board the “Nellie” during the evening of April 5, 1961. His body was discovered floating in the water amongst the pilings in the space between the Jefferson Street dock and the empty barges during the morning of April 9, 1961. His death was caused by drowning.
The appellee contended that appellant was negligent by failing to provide a safe place where the crew could board and disembark from the tug. The tug’s captain, Davis, when questioned about the method he and the crew used to get from the tug to the Jefferson Street dock testified as follows:
“Q. Would you describe the manner in which you went from the dock to your home that night, on the night of April 4th ?
“A. Yes, across the barges and to get down off the barge on the dock I came to where one of the lines was tied to the piling and put your hands on the piling and probably step on the line, and off on the dock.
“Q. Did you have to necessarily go down toward the dock, down from the barge to the dock?
“A. Yes. I had to step from the barge to the dock, it is a distance around four or five feet.
“Q. Did you return to the tug the next morning, on the morning of April Sth?
“A. Yes, approximately seven thirty in the morning I came back to the tug.
“Q. During the day did the tug remain tied up there?
“A. Yes, it remained tied up there all that day.
“Q. That night did you again go home?
“A. Yes, I went home.
“Q. What route did you follow?
*267 “A. The same route, across the barges and down the dock.
“Q. Did the other members of the crew use the same method of going to and from shore?
“A. Yes, that is the only way they could possibly get ashore at that time.” (Tr. 32, 33)
The record reflects that the Jefferson Street dock was without lights and that some of its planking was loose. There was another well lighted docking facility nearby where the tug could have been conveniently moored.
This action was brought under Title 46, United States Code, § 688, commonly known as the Jones Act. Under this act the amount of proof necessary to raise a jury question is of different degree from that necessary to support an action based on common law negligence. The test under the Jones Act is defined in Rogers v. Missouri P. R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493, as follows:
“Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee’s contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.”
The evidence in the case at bar meets this test.
Appellant admits he had the duty to provide a reasonably safe means of boarding and departing from the vessel. The appellee contends that appellant failed in this duty. There is evidence of record from which, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death. The prime conclusion was that appellant failed to furnish Hamilton a safe means to board and leave the tug and that this negligence had a part in his death.
Finally, petitioner contends that since James Fletcher Hamilton was a relief captain, in command of the vessel in the absence of Captain Davis, it was his duty to move the vessel if it was moored in an unsafe place. For this reason, appellee should not be permitted to recover from a breach of duty which Hamilton failed to discharge. We ¡find testimony to the effect that Hamilton’s authority to move the tug was limited to emergency situations arising when the captain was not available. This issue was submitted upon conflicting testimony to the jury which resolved these conflicts adversely to the contention of appellant. At any rate, this was a jury question and we find no reason to disturb its finding on the point.
Account of the reasons above stated, the judgment of the circuit court is affirmed.
TERRELL, THOMAS, DREW and THORNAL, JJ., concur.
ROBERTS, C. J., concurs in part and dissents in part and agrees with special opinion of O’CONNELL, J.
O’CONNELL, J., dissents in part with opinion.
CALDWELL, J., dissents in part and agrees with opinion of O’CONNELL, J.