125 N.J. Super. 171 (1973)
309 A.2d 746
LORRAINE EGBERT, PLAINTIFF,
v.
THEODORE RICHARD EGBERT, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided September 19, 1973.
*172 Mr. Sidney N. Lane for plaintiff (Newark Legal Services Project, Walter M. Mitchell, attorney).
CONSODINE, J.S.C.
Plaintiff proves and corroborates an action for divorce (N.J.S.A. 2A:34-2) and for alimony and support (N.J.S.A. 2A:34-23). Service was made by publication (R. 4:78-2(a)) with special substituted service (R. 4:78-2(c)) on the mother of defendant who resides in this State. The file discloses a communication from her after the substituted service in which she states that *173 while she did not know defendant's whereabouts, he had telephoned to her recently from Florida on several occasions; to prevent her "involvement" in the matter, he declined to give her any address. Four months elapsed between substituted service and trial. It is inconceivable that he did not have notice of this suit from her.
There are six infant children of the parties. Plaintiff receives from the county welfare board $462 a month and other benefits for the support of herself and their children. The funds therefor come from appropriations of 50% from the Federal Government and 25% each from the State and County Governments.
In a prior action in our Juvenile and Domestic Relations Court personal service had been made on defendant. He participated in that case for six years. He still remains on probation from that court until 1974. With the issuance of a bench warrant in that court, defendant left this State for parts unknown and still remains away by choice.
There being no evidence that this itinerant husband has acquired domicile elsewhere, I find that his domicile has remained in this State at all times. N.J.S.A. 2A:34-8.
Kase v. Kase, 18 N.J. Super. 12 (App. Div. 1952), well expressed our then precedents concerning service in a matrimonial action vis a vis due process.
Foris v. Foris, 103 N.J. Super. 316 (Ch. Div. 1968), in sustaining service by registered mail in Nevada on a husband visiting there for an ex parte divorce, review the "long arm" cases in this State and concluded that
* * * If it is in the State's interest in the commercial sphere to protect its citizens by diminishing the harsh and arbitrary effect of state boundaries, it is of no less importance in the area of law now before us. * * * [at 323]
(Judge Horn advises me that the underlined word was inadvertently eliminated from the printed opinion).
Foris was followed by Wright v. Wright, 114 N.J. Super. 439 (Ch. Div. 1971), where, although service was made outside *174 of New Jersey, separate maintenance was awarded under the "long arm" doctrine, and by E. v. T., 124 N.J. Super. 535 (Ch. Div. 1973), where the question involved was whether personal service of process in Nevada constituted due process to defendant in a custody case?
Since International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), it is undisputed that
Due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". [at 316]
There has been over a quarter of a century a general easing of due process requirements. This easing applies as well to individuals as to foreign corporations. Rosenblatt v. American Cynamid Co., app. dism. 382 U.S. 110, 86 S.Ct. 1, 15 L.Ed.2d 39 (1965). See also, J.W. Sparks & Co. v. Gallos, 47 N.J. 295 (1966); Avdel Corp. v. Mecure, 58 N.J. 264 (1971). Requirements as enunciated in Pennoyer v. Neff, 95 U.S. 714, 95 L.Ed. 565 (1877), were eased, among other cases, by International Shoe Co. v. Washington, supra; Travelers Health Ass'n v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
McGee v. International Life Ins. Co., 355 U.S. 220, 222-223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), premised this moderation on the increasing nationalization of commerce due to modern transportation and communication.
See also, "Jurisdiction  Past Contacts with State Held Sufficient Basis for In Personam Alimony Award against Non-Resident Spouse," 1 Rutgers Camden L.J. 117 (1969):
* * * On the contrary, a fair assessment of the relevant policy supports the majority's conclusion that the minimum contacts concept is "peculiarly" suited to this type of case [concerning Mizner *175 v. Mizner, 84 Nev. 268, 439 P.2d 679 (Sup. Ct. 1968) cert. den., 393 U.S. 847, 89 S.Ct. 130, 21 L.Ed.2d 117 (1968), reh. den. 393 U.S. 972, 89 S.Ct. 391, 21 L.Ed.2d 386 (1968)
In addition to those considerations offered by the majority to support its decision, there are many others which can be cited. Rapid technological developments improving the speed and facility of transportation necessitate an expanded scope of jurisdiction. The inconvenience and hardship experienced in requiring resort to a foreign forum, the cost of which could inhibit the plaintiff-spouse from ever bringing any action and financially dilute whatever award the spouse might win, further supports an expanded base of jurisdiction. Also, the convenience of hearing the action where the cause of action arose; the enjoyment, by the departed spouse, of the rights and protections of the matrimonial state while residing in that state; the contraction of the marriage and residence in the marital state and the consequent obligations arising therefrom; and the perpetration of the acts in the matrimonial state which gave rise to the cause of action, all support the legitimacy and need of a minimum contacts jurisdictional basis. [at 128]
These cases focus on (1) the nature and extent of defendant's connection with the State; (2) the interest of a party in having the litigation in a particular forum, and (3) the interest of the State in providing plaintiff with an effective means of redress. This last would, of course, include the right and duty of the State to seek reimbursement of public funds expended for the welfare of defendant's dependents.
The cases as a group are equally relevant to matrimonial actions where alimony, child support, or both, are sought. The last matrimonial domicile would seem to be the proper forum where divorce, support and custody cases can be litigated. The existence of a marital domicile in a state has as many consequences as economic activity does (McGee v. International Life Ins. Co., supra) and should satisfy due process requirements so as to permit in personam jurisdiction for the award of alimony and child support against a vagrant spouse.
In Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940), the Supreme Court left no room for interpretation where judgment was entered after service pursuant to statute in another state, holding that:
*176 * * * the authority of a state over one of its citizens is not terminated by the more fact of his absence from the state. The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties. * * * One such incidence of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him.
See discussion in Goodrich on Conflicts, "Jurisdiction of Courts", § 73 at 118 (1964); see also, Lea v. Lea, 32 N.J. Super. 333 (App. Div. 1954). And the Restatement, Conflict of Laws 2d, § 77, comment (C) (1971), states:
The state of matrimonial domicile, which is the state where the spouses were domiciled when they last lived together as man and wife, should usually at least have jurisdiction to grant support if the plaintiff spouse has continuously remained domiciled there.
The "long arm" statutes of various states were enacted to secure jurisdiction over non-residents for tortious acts and breaches of contract. The courts of these states reject expansive construction of the statutes to matrimonial matters (but see Poindexter v. Willis, 87 Ill. App.2d 213, 231 N.E.2d 1 (App. Ct. 1967)), even though marriage is a contract, although in some jurisdictions the statute has been held applicable to matrimonial suits involving separation agreements as contracts. See Kochenthal v. Kochenthal, 28 A.D.2d 117, 282 N.Y.S.2d 36 (App. Div. 1967).
The jurisdiction this court asserts is not based on statute but on the facts found and case law cited. Cf. 19 N.J. Practice (Ackeson, Fulop, Lodge, Skills and Methods), § 688, at 465 (1973). Personal service could not be made on defendant because his whereabouts were unknown and he continued to keep them unknown. In that vacuum additional service was made on his mother in New Jersey. And, as stated, defendant, who had been personally served in New Jersey in the Juvenile and Domestic Relations Court case and appeared therein, was admittedly in frequent communication with his mother. There is little doubt that *177 if defendant was personally served in any state, alimony and child support would have been adjudged in New Jersey. The service made herein gave defendant opportunity of notice of the action and does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, supra; see also, U.S. v. Smith, 398 F.2d 173 (3 Cir. 1968), holding that the test under due process and under full faith and credit clause, of validity of notice given nonresident defendant in divorce proceeding, is not whether the absent spouse received notice, but whether the method used was one reasonably calculated to give actual notice.
It would seem that there is little extension of the rule of the cases in holding that personal service in the Juvenile and Domestic Relations Court can be carried over into the Superior Court, Matrimonial Division, where the parties are the same and part of the relief sought in the latter court is alimony and support of wife and children, where the forum is the last matrimonial domicile of the parties and plaintiff-spouse has continuously remained domiciled there, where service was made at the only address and to the only available person whence notice might get to defendant, and where the forum state has, at the least, the legitimate interest that it is supporting the dependents of the recalcitrant defendant. The contacts are more than minimal. There is no offense to traditional notions of fair play and substantial justice. Interfamilial notice was made available. United States v. Smith, supra. Moreover, defendant knew his wife and children were in New Jersey without any support from him. The balance of trial convenience is in favor of New Jersey.
Legal writers have not been silent on the subject matter. Generally, "Long Arm Jurisdiction in Alimony and Custody Cases," 73 Columbia L.R. 289 (1973)  the existence of a marital domicile has as many consequences as economic activity. Holding an individual responsible for his actions *178 in the state where they occurred does not violate due process. (at 296-297); "Using Long Arm Jurisdiction to Enforce Marital Obligations," 42 Miss. L.J. 183 (1971)  wives who need support most are least able to litigate across state lines; "Extension of the Illinois Long Arm Statute-Divorce and Separate Maintenance," 16 DePaul L.R. 45 (1966)  a state is as interested in marriage and the family as it is in tortious acts or the doing of business; "Long Arm and Quasi in Rem Jurisdiction and the Fundamental Test of Fairness," 69 Mich. L.R. 300 (1970); 1 Rutgers Camden L.J. 117, supra. See also, Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656 (1971); Mizner v. Mizner, supra.
Cooke v. Yarrington, 62 N.J. 123 (1973), is instructive in the liberality of approach in an analogous situation to the proposition that our system of justice is both living and vigorous. Even the dissent is relevant to our facts
* * * There is no indication whatever that defendant's removal from the State in the meantime was motivated in any way by plaintiff's pending claim against him. [at 131-132]
Appropriate thereto is comment contained in Shanks, The Art and Craft of Judging  The Decisions of Judge Learned Hand, 17. See also, Bartkus v. Illinois, 359 U.S. 121 (1959), where the Supreme Court speaking through Mr. Justice Frankfurter, stated:
The Anglo-American system of law is based not on transcendental revelation but upon the conscience of society ascertained as best it may be by a tribunal disciplined for the task and environed by the best safeguards for disinterestedness and detachment. [at 128, 79 S.Ct. at 680]
There will be a judgment of divorce, with alimony and support of $462 a month payable to the county welfare board through our Probation Department, with allocation in accordance with the welfare board rules.