329 So.2d 343 (1976)
Inge PINEBROOK, a/K/a Inge Fletcher, Appellant,
v.
William E. PINEBROOK, Appellee.
No. 74-1655.
District Court of Appeal of Florida, Fourth District.
March 26, 1976.
*344 Edna L. Caruso, of Howell, Kirby, Montgomery, D'Aiuto, Dean & Hallowes, P.A., West Palm Beach, and Gilbert T. Brophy, Tequesta, for appellant.
Willard C. Wheeler, Jr., Jupiter, for appellee.
OWEN, Judge.
Appellant-wife is appealing from an order dismissing with prejudice her complaint to establish and enforce a California divorce decree as is relates to certain real property located in Florida.
The wife's amended complaint is in two counts: the first seeks enforcement of that provision of the California divorce decree directing the parties to sell certain real property located in Jupiter  Tequesta, Florida, and to divide the proceeds therefrom equally between them; the second count requests, alternatively, that the Florida court provide for a division of the property in question based upon the concept of tracing community funds. In response to the complaint, the defendant-husband, appellee, filed a motion to dismiss the complaint on the ground that the court lacked jurisdiction "over the subject matter" because that aspect of the judgment sought to be enforced was a personal judgment which had been entered without acquiring personal jurisdiction over him in California. From the trial court's order granting this motion and dismissing the complaint with prejudice, the wife now appeals.
The essential issue with which we are confronted is: whether the California court had personal jurisdiction over defendant so as to permit entry of a valid personal judgment against him which is, in turn, entitled to enforcement in this state under the full faith and credit clause of the United States Constitution.
We note initially that the submission and decision of this issue on a motion to dismiss was premature and improper. No suggestion has ever been made, here or below, that the court in which appellant's amended complaint initiating the present action was filed was not the proper forum to entertain such an action, or that service of process over the husband consonant with the applicable Florida statutes was not obtained, and in the absence of these factors, the lower court lacked neither jurisdiction over the subject matter nor over the parties and the motion to dismiss should have been denied. Defendant's motion, contesting, as it did, the jurisdiction of the California court to enter the judgment which the wife seeks to enforce in Florida, was plainly addressed to the merits of the cause and was properly a subject for a defensive pleading, not a motion to dismiss for lack of jurisdiction. Perceiving, however, that little would be accomplished by requiring the defendant and the lower court to present and decide this issue in its proper procedural context, as the practical result would undoubtedly be the same, and the identical issue would undoubtedly be returned to us, we have elected to address the merits of the case in its present posture.
The parties were married in California in 1964. They established a marital domicile in that state which they maintained for over eight years' duration. At the time of the institution of the divorce action in California in 1973, the appellant and the parties' minor son continued to reside in California. However, appellee was then residing in Utah and it was there that he was served with the summons and divorce complaint by certified air mail, return receipt requested. The record reflects that appellee signed the return receipt, but he made no appearance in the California action. A judgment of dissolution of marriage was subsequently entered, awarding appellant custody of the parties' minor child, ordering appellee to pay alimony, child support and attorney's fees, *345 and directing the parties to sell the Florida real property (which is the subject of the present action) and to divide the proceeds therefrom. Appellee's contention in this court is that the California judgment is a nullity insofar as it purports to order him to dispose of the Florida property because such is a personal judgment which can only be entered upon the acquisition of personal jurisdiction.
In order to determine whether or not the California court obtained personal jurisdiction over appellee, we must make a two-fold inquiry, Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679 (1968), cert. denied, 393 U.S. 847, 89 S.Ct. 130, 21 L.Ed.2d 117 (1968); Mitchim v. Mitchim, 518 S.W.2d 362 (Tex. 1975); Fox v. Fox, 526 S.W.2d 180 (Tex.Civ.App. 1975); Wright v. Wright, 114 N.J. Super. 439, 276 A.2d 878 (Ch. 1971): (1) does the law of the forum state (here, California) authorize acquisition of such jurisdiction by service of process in the manner here employed; (2) were there sufficient minimum contacts between appellee and the forum state relevant to the cause of action to satisfy traditional notions of fair play and substantial justice.
With respect to the first question, § 410.10 of California's Civil Procedure Code, Title V: Jurisdiction and Service of Process, vests the California courts generally with the broadest possible jurisdiction:
"§ 410.10. [Jurisdiction exercisable]
A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."
Subsequent sections in this title specify how this jurisdiction is to be invoked, Specifically, for our purposes, § 413.10 provides:
"§ 413.10. [Application of this chapter or foreign law to service in or outside this state and outside United States: Court's direction]
Except as otherwise provided by statute, a summons shall be served on a person: (a) Within this state, as provided in this chapter.
(b) Outside this state but within the United States, as provided in this chapter or as prescribed by the law of the place where the person is served.
* * *"
This same chapter provides for five different forms of service of process [1] personal delivery, [2] delivery to a specified person, usually at defendant's abode or place of business, [3] delivery by ordinary mail with return acknowledgement, [4] delivery by registered or certified air mail with return receipt, [5] publication), and § 415.40 expressly authorizes the use of any of these five forms for serving out-of-state defendants:
"§ 415.40. Service on person outside state.

A summons may be served on a person outside this state in any manner provided by this article or by sending a copy of the summons and of the complaint to the person to be served by any form of air mail requiring a return receipt... ."
Clearly, California law authorized the manner of service employed in this case and allowed for the type of jurisdiction, based upon this service, that was exercised.[1] The only caveat, insofar *346 as California law is concerned, is that the exercise of this jurisdiction comport with the constitutional requirements of due process. These requirements are basically two: first, the manner of service employed must be reasonably calculated to give actual notice, Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); second, there must be sufficient minimum contacts, relevant to the cause of action, between the forum state and the person sought to be reduced to its jurisdiction to satisfy traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[2]
As to the due process requirement that the form of service be reasonably calculated to give actual notice, we think that this requisite was satisfied in this case by serving appellee by certified air mail, return receipt requested. Such form of service has been deemed sufficient to acquire personal jurisdiction over out-of-state defendants in other types of actions, e.g., Travelers Health Ass'n v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154 (1950); McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Rosenblatt v. American Cyanamid Company, 86 S.Ct. 1, 15 L.Ed.2d 39 (1965) (Goldberg, J. in Chambers), app. dism'd. 382 U.S. 110, 86 S.Ct. 256, 15 L.Ed.2d 192 (1965), and, although the divorce cases which we have examined which have dealt with the problem of acquiring personal jurisdiction over out-of-state residents have all been premised upon personal extraterritorial service,[3] e.g., Soule v. Soule, 193 Cal. App.2d 443, 14 Cal. Rptr. 417 (1961), cert. den. 368 U.S. 985, 82 S.Ct. 600, 7 L.Ed.2d 523 (1962); Farah v. Farah, 25 Ill. App.3d 481, 323 N.E.2d 361 (1975); Hines v. Clendenning, 465 P.2d 460 (Okl. 1970); Mizner v. Mizner, and other cases cited, supra, we see no reason to distinguish between these types of service and/or cases, or to require a *347 more rigorous form of notice in divorce actions, the sole relevant criterion in every case being, under the particular circumstances of the case, whether the service is reasonably calculated to give notice so that defendant may appear and be heard.
We now turn to the second due process requirement and the second prong of our initially posed inquiry, whether appellee had sufficient minimum contacts with the forum state, California, to justify the imposition of personal jurisdiction. The power of a court to obtain personal jurisdiction over an out-of-state defendant has been greatly expanded since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877) which held that personal jurisdiction over a nonresident could only be obtained by personal service within the boundaries of the forum state or by the defendant's voluntary appearance in the action. The basic modern rule was announced in International Shoe Co. v. Washington, supra:
"Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, 572. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" (emphasis supplied)
See also, McGee v. International Life Insurance Co., supra; Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The minimum contacts test has repeatedly been recognized as applicable to individuals as well as to corporations. Calagaz v. Calhoon, 309 F.2d 248 (5th Cir.1962); Hamilton National Bank of Chattanooga v. Russell, 261 F. Supp. 145 (E.D. Tenn. 1966); Owens v. Superior Court of Los Angeles County, 52 Cal.2d 822, 345 P.2d 921, 78 A.L.R.2d 388 (1959); J.W. Sparks & Co. v. Gallos, 47 N.J. 295, 220 A.2d 673 (1966); 62 Am.Jur.2d, Process, § 79, at 861 (1972). The types of contacts which have been held sufficient to justify subjecting an out-of-state defendant to a personal judgment have included doing business in the forum state, International Shoe Co. v. Washington, supra; soliciting and entering into contracts with residents of the forum state, McGee v. International Life Insurance Co., supra; Anno., 49 A.L.R.2d 668 (1956); producing and/or distributing goods anticipating their use in the forum state, see, Anno., 19 A.L.R.3d 13 (1968); Anno., 20 A.L.R.3d 957 (1968); committing a tortious act in the forum state, either with a dangerous instrumentality, Edmundson v. Hamilton, 148 So.2d 262, 99 A.L.R.2d 279 (Fla. 1962); Anno., 99 A.L.R.2d 287 (1965); 62 Am.Jur.2d, Process, § 82 (1972), [watercraft or motor vehicles, e.g.], or without, Owens v. Superior Court of Los Angeles County, supra; Anno., 78 A.L.R.2d 397 (1961), and, in recent years, as recognized by a growing body of case law, establishing and maintaining a marital relationship in the forum state, e.g., Mizner v. Mizner, supra; Mitchim v. Mitchim, supra; Fox v. Fox, supra; Dillon v. Dillon, 46 Wis.2d 659, 176 N.W.2d 362 (1970); Stucky v. Stucky, supra; Hines v. Clendenning, supra; Soule v. Soule, supra; Wright v. Wright, supra; Renwick v. Renwick, 24 Md. App. 277, 330 A.2d 488 (1975); Egbert v. Egbert, 125 N.J. Super. 171, 309 A.2d 746 (Ch. 1973); see also, Rodriguez v. Rodriguez, 8 Ariz. App. 5, 442 P.2d 169 (1968).
The rationale for applying the minimum contacts test in matrimonial cases was well stated by the Supreme Court of Nevada in Mizner v. Mizner, supra, 439 P.2d at 680-1:
"... it seems to us that the minimum contacts concept of in personam jurisdiction *348 is peculiarly suited to matrimonial support cases. If such contacts are in fact present in the particular case before the court, then the extension of in personam jurisdiction beyond the borders of the forum state may prove to be a sensible step in solving some of the hardships arising from family separation. Courts must know by this time that strict application of the Pennoyer rule to family support cases has encouraged migratory divorce by offering a shield to a spouse wishing to avoid financial responsibility. The state of the matrimonial domicile has a deep interest in its citizens and a legitimate purpose in taking steps to preclude their impoverishment. Accordingly, it is our opinion that in personam jurisdiction may be acquired over a non-resident defendant in a divorce action by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exist sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy `traditional notions of fair play and substantial justice.' The demands of due process are satisfied in these circumstances." [footnotes omitted]
As was pointed out by the New Jersey court, writing in Egbert v. Egbert, supra, 309 A.2d at 748:
"The existence of a marital domicile in a state has as many consequences as economic activity does. .. ."
Although the Mizner and Egbert cases were concerned specifically with the enforcement of matrimonial support provisions, we find their rationale equally compelling with regard to a provision directing a division of property such as involved in the case at bar. The enforcement of such a provision can be just as critical to the overall economic situation of the spouse remaining in the forum state as enforcement of a periodic support provision.
The minimum contacts held sufficient to satisfy due process in the cited matrimonial cases have consisted of as simple an act as maintenance of the last marital domicile within the forum state, coupled with the petitioning spouse's continued residence in the forum state, Egbert v. Egbert, supra; Renwick v. Renwick, supra; in conjunction, in some cases, with the fact or assumption that the cause of action (for divorce) arose out of conduct in the forum state, Mizner v. Mizner, supra; Soule v. Soule, supra; Hines v. Clendenning, supra, and/or in conjunction, in other cases, with continuous and systematic maintenance of the family in the marital domicile after separation, Stucky v. Stucky, supra; Mitchim v. Mitchim, supra; Fox v. Fox, supra. At least two of these three factors are present in the case at bar and we therefore conclude that the facts of this case reflect sufficient minimum contacts to justify the acquisition of personal jurisdiction over appellee by the California courts.
Having concluded, therefore, (a) that California law permits acquisition of personal jurisdiction over a nonresident by extraterritorial mailed service, return receipt requested, and (b) that requiring a defendant to submit to such jurisdiction under these circumstances is consonant with the requirements of due process, we hold that the California divorce decree, insofar as it constituted a personal judgment, is valid and therefore entitled to enforcement in our courts under the full faith and credit clause of the United States Constitution. Newton v. Newton, 245 So.2d 45 (Fla. 1971); Overly v. Overly, 66 So.2d 706 (Fla. 1953).
We find that the trial court further erred in dismissing the second count of appellant's amended complaint, which requested the court to take in rem jurisdiction of the Florida realty, to trace community assets to that property, and to vest in appellant title to her share. Appellee has not briefed and thus appears to have conceded this point to appellant. We have, nevertheless, *349 examined the grounds stated in his motion to dismiss the complaint below[4] and disagree with his contention that the second count initiates an in personam proceeding and that it cannot be maintained upon mere constructive service as was had in this case. See, Fla. Stat. § 49.011(1) (1973).
The cause is reversed and remanded to the trial court with instructions to reinstate appellant's amended complaint and lis pendens.
REVERSED and REMANDED.
WALDEN, C.J., and DOWNEY, J., concur.
NOTES
[1] Herein lies the distinction between the case at bar and numerous cases upon which appellee relies, wherein the forum state lacked the statutory or other legal authority for the jurisdiction which it purported to exercise. E.g., May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953) [no authority in the forum state for obtaining jurisdiction over the person]; Farley v. Farley, 227 Cal. App.2d 1, 38 Cal. Rptr. 357 (1964), cert. den. 379 U.S. 945, 85 S.Ct. 438, 13 L.Ed.2d 543 (1964); Barber v. Barber, 51 Cal.2d 244, 331 P.2d 628 (1958) [no authority in the forum state for exercising jurisdiction over the subject matter]. Appellee concedes that California did at one time have a statute which authorized the acquisition of personal jurisdiction over nonresidents by extraterritorial service (former § 417 of the California Code of Civil Procedure), but he argues that this section has been repealed and that the current California Code no longer provides for such jurisdiction. We disagree. The California Legislature replaced § 417 with § 410.10, supra, and it is apparent from the face of this statute that it was intended to expand, not restrict, the permissible bases of jurisdiction. This is, in fact, California's own interpretation of its new statute. See, the Historical Note following § 410.10; Schoch v. Superior Court of Contra Costa County, 11 Cal. App.3d 1200, 90 Cal. Rptr. 365 (1970).
[2] This second requirement is, of course the second prong of our original inquiry, which we shall address shortly. Because the California statutes define judicial jurisdiction as coextensive with that which is constitutionally permissible, this question becomes necessary for the resolution of both of our initially posed queries, but we need of course, only answer it once.
[3] Appellant calls our attention to the case of Foris v. Foris, 103 N.J. Super. 316, 247 A.2d 156 (Ch. 1968) as an example of a matrimonial case approving acquisition of personal jurisdiction by service by registered or certified mail in another state. The defendant in Foris, however, at the time of such service, was still a domiciliary of the forum state; he was simply absent from its borders. This fact was crucial to the determination of that particular case in which the court relied heavily upon the principle set forth in Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940):

"... the authority of a state over one of its citizens is not terminated by the mere fact of his absence from the state. The state which accords him privileges and affords protection to him and his property by virtue of his domicile may also exact reciprocal duties... . That relationship is not dissolved by mere absence from the state... . One such incidence of domicile is amenability to suit within the state even during sojourns without the state, where the state has provided and employed a reasonable method for apprising such an absent party of the proceedings against him."
See also, Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656, 659 (1971); 62 Am.Jur.2d, Process, § 71 (1972).
[4] Appellee's motion alleges, in pertinent part:

"Count II of the Amended Complaint requests this Court take `in rem jurisdiction'. A proceeding in rem is `... one taken directly against property, having for its object the disposition of such property by authority of law... .' The allegations of Count II do not show an in rem proceeding but rather an in personam proceeding asking the Court to declare Defendant personally obligated for money damages on the basis of constructive or substituted service."