341 So.2d 253 (1976)
Loys LEFKOVITZ et al., Appellants (Plaintiffs),
v.
Louis LEFKOVITZ, Appellee (Defendant).
No. AA-86.
District Court of Appeal of Florida, First District.
December 30, 1976.
*254 Donald F. Leggett, of Black & Leggett, P.A., Jacksonville, for appellants.
Gerald R. Power, Jacksonville, for appellee.
MILLS, Judge.
Ms. Lefkovitz, her daughter and attorney filed this action against Mr. Lefkovitz, her former husband, to establish in Florida an Illinois judgment obtained in a proceeding ancillary to an Illinois divorce. The judgment was for arrearages in alimony, child support and attorneys' fees. Mr. Lefkovitz contended, and the trial court agreed, that the Illinois divorce decree was ineffective, for lack of personal jurisdiction over him, to require that he pay alimony, child support and attorneys' fees. We agree.
The question which is determinative of this appeal is whether the Illinois divorce court had personal jurisdiction of Mr. Lefkovitz, notwithstanding his absence from that state, by process served pursuant to the Illinois long arm statute,[1] which provides:
"(1) Any person, whether or not a citizen or resident of this State, who in person ... does any of the acts hereinafter enumerated, thereby submits ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:
.....
"(e) With respect to actions of divorce and separate maintenance, the maintenance in this State of a matrimonial domicile at the time the cause of action arose or the commission in this State of any act giving rise to the cause of action."
There is substantial competent evidence to support the court's findings that Mr. Lefkovitz left Illinois in November 1971 and established a business and residence in Florida; although he occasionally returned to Illinois to visit with his family, he remained a resident of Florida; he last visited with the family the first part of November 1973 and at this time decided to never return; the act giving rise to Ms. Lefkovitz's divorce action, filed in Illinois in December 1973, occurred in Florida the latter part of November 1973; and Mr. Lefkovitz was served with process in Florida under the Illinois long arm statute.
From these facts, the trial court properly determined that the Illinois trial court did not acquire personal jurisdiction of Mr. Lefkovitz because the act giving rise to the Illinois divorce action occurred in Florida and at that time there was no marital domicile in Illinois.
The judgment is affirmed.
DRURY, ARVEL, Associate Judge, concurs.
SMITH, J., dissents.
SMITH, Judge, dissenting:
The majority have inexplicably and, in my view, erroneously found there was no *255 marital domicile in Illinois when the cause of action for divorce arose. I believe there was, and consequently that the Florida trial court was bound to grant the Illinois judgment full faith and credit as one predicated on jurisdiction constitutionally asserted under Illinois' long-arm statute.[1]
In 1966 the parties married and made their home in Illinois. In November 1971, Mr. Lefkovitz moved to Florida to establish a business. Both planned that she and the children would later join him. He established a Florida residence but occasionally returned to Illinois for visits, during which the parties were as husband and wife, although with some discord. He continued to make mortgage payments on the home in Wheeling, Illinois, and otherwise maintained the family there. During a visit to the marital home ending November 12, 1973, he decided never to return. When he did not return at Thanksgiving as expected, she flew to Jacksonville, Florida, on November 26 and discovered him living with another woman.
Ms. Lefkovitz instituted divorce proceedings in Illinois and caused Illinois process to be served on her husband in Jacksonville in accordance with the Illinois long-arm statute. Mr. Lefkovitz did not appear in the Illinois divorce proceedings, in which a final decree was entered January 22, 1975, granting her a divorce on the Illinois ground of extreme mental cruelty.[2] The Illinois decree ordered him to pay her attorneys' fees; $1,000 per month permanent alimony; $200 per month support for the minor son plus all expenses necessary for the son's prepschool and college education; and $300 per month for the support of a 19-year old daughter living at home and attending junior college, to be modified if she decides to attend college and live away from home. In recognition of her special equities, he was also ordered to convey to Ms. Lefkovitz the home property and lot in Cook county; to pay her the balance due on a contract of sale of other property in Chicago; and to account for and to pay to her one-half the profit of any business owned by him. The judgment for arrearages was entered on May 6, 1975.
In the meantime, after satisfying the residency requirement of § 61.021, F.S. 1973, the husband instituted his own dissolution proceedings in the Duval County circuit court on December 17, 1974. She did not appear and was not served process in Florida. The record does not reveal whether and by what means personal jurisdiction of the wife was claimed in his action for dissolution. On March 26, 1975, the Duval County court entered a final judgment of dissolution, reciting that "the court has jurisdiction of the parties." The absent wife was awarded permanent care and custody of the two children and he was directed to pay her child support of $100 per month per child until the child becomes 21.
Here the trial court dismissed the wife's complaint to establish the foreign judgment after making an independent determination of whether the Illinois court had personal jurisdiction of the husband when entering the divorce decree. Under the Supreme Court's second decision in Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945), it was proper for the trial court to determine that issue itself because the husband did not appear and litigate that issue in Illinois.[3] Without addressing the constitutionality of the Illinois statute, the trial court found the statute's terms had not been met because:
"The act giving rise to the cause of action in Illinois occurred in Florida in November, *256 1973, and there was no marital domicile in Illinois at that time or thereafter."
Locating the marital domicile for divorce jurisdiction purposes once depended on the merits of the case, because a husband departing to another state took with him the "domicile of matrimony" and that of his wife only if he left faultlessly. Haddock v. Haddock, 201 U.S. 562, 571-72, 26 S.Ct. 525, 528, 50 L.Ed. 867, 870 (1906). The Supreme Court's first decision in Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942), was thought to have put an end to the difficulty of that rule[4] by holding that courts at the domicile of either partner may divorce them. But the concept of a marital domicile  in the simpler sense of the last homeplace the marriage partners shared  has found renewed usefulness to legislatures reaching to claim for their courts personal jurisdiction, incident to the termination of marriage, to exact alimony and other financial adjustments from the absent spouse. Thus, it has repeatedly been held, most recently in Judge Owen's scholarly opinion for the District Court of Appeal, Fourth District, that due process standards permit a state to assert personal jurisdiction over a departed husband to enforce his obligation to support a stay-behind spouse long domiciled at the forum. Pinebrook v. Pinebrook, 329 So.2d 343 (Fla.App. 4th, 1976), and cases cited at 348. To affirm the jurisdictional interests of that state "seems so sensible," wrote one commentator on the murky doctrines of domicile, "that it should be obvious to any one who had never become confused by studying law." Powell, And Repent at Leisure, 58 Harv.L.Rev. 930, 955 (1945). See also Restatement (Second) of Conflicts § 77 (1971).
The trial court in this case did not reach the question  which I would decide in the affirmative  whether Illinois as the last marital domicile was constitutionally permitted to claim personal jurisdiction of the departed Mr. Lefkovitz. The parties stipulated and the evidence showed that the last marital domicile was in Wheeling, Illinois. But the trial court held that that matrimonial domicile was not "[maintained] at the time the cause of action arose," as the statute recites. The court thus found that Ms. Lefkovitz's cause of action for divorce arose in November 1973, presumably referring to her discovery here, on November 26, 1973, of her husband's adulterous relationship. The implication of the trial court's judgment is surely not that the marital domicile came to Florida with Mr. Lefkovitz in 1971 and never flew back to Illinois[5]  shades of Haddock!  but rather that there was no marital domicile at all in November 1973. Such reasoning would be that the home where the parties lived with their children in Wheeling, Illinois, lost its character as the matrimonial domicile when the husband left it in November 1971; or when, intending to stay, he established a residence in Florida; or when he decided, on November 12, 1973, never to return to his Illinois wife. In this I believe the trial court and the majority here have read the Illinois statute too narrowly.
Illinois, like so many states,[6] wishes its jurisdictional statutes to be read as broadly as their terms and the due process clause permit. Nelson v. Miller, 11 Ill.2d 378, 389, 143 N.E.2d 673, 678 (1957). There is no reason to believe that Illinois desires less jurisdiction for the protection of its domiciliaries than, say, California, whose long-arm statute simply authorizes its courts to exercise jurisdiction "on any basis not inconsistent" with the United States Constitution.[7] The Illinois statute, therefore, should not be *257 more closely confined than its language requires.
Viewing the statute and the record in this light, I conclude that the Lefkovitz marital domicile was maintained in Illinois when Ms. Lefkovitz's cause of action arose and, consequently, that the Illinois court had personal jurisdiction of Mr. Lefkovitz when the divorce action was filed in December 1973.
There is no reason to assume, as the judgment below apparently did, that there was no cause of action for divorce until November 26, 1973, when Ms. Lefkovitz discovered her husband living with another woman in Jacksonville. The Illinois judgment granted Ms. Lefkovitz a divorce not on grounds of adultery  even that must have antedated, Ms. Lefkovitz's discovery of it on November 26, 1973  but for "extreme and repeated mental cruelty" (emphasis added). The plain implication is that the stated ground existed sometime prior to November 1973.[8]
Effect should also be given to the evidence that, even in November 1973, Mr. Lefkovitz was still supporting his wife and children in the Illinois home and was making mortgage payments on it. He last visited the Wheeling home and had marital relations with his wife in early November 1973, less than a month before his adultery in Jacksonville was discovered. "[C]ontinuous and systematic maintenance of the family in the marital domicile after separation" is an important jurisdictional element. Pinebrook, 329 So.2d at 348, and cases cited.
Because it appears from the record that Mr. and Ms. Lefkovitz were maintaining the marital domicile in Illinois at the time of his conduct giving rise to her cause of action for divorce, it is unnecessary to discuss whether, in any event, the Illinois statute was intended to and does attach personal jurisdiction to a departing husband when the last marital domicile was maintained there, although it was no longer maintained when the cause of action arose. The Illinois divorce decree and money judgment for arrearages should be accorded full faith and credit by Florida courts.
NOTES
[1] Smith-Hurd Ann., Ch. 110, § 17.
[1] Smith-Hurd Ann., ch. 110, § 17(1)(e). A 1973 revision of the Florida long-arm statute similarly but somewhat ambiguously provides personal jurisdiction in marital litigation of a nonresident who "maintains a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not." Sec. 48.193(1)(e), F.S. 1975.
[2] Smith-Hurd Ann., ch. 40, § 1.
[3] Had Mr. Lefkovitz actively contested the jurisdictional issues in Illinois, that court's judgment finding jurisdiction would have been entitled to full credit in Florida without further examination of the jurisdiction question. Haas v. Haas, 59 So.2d 640 (Fla. 1952).
[4] Mr. Justice Douglas' opinion for the Court in the first Williams case stated: "Haddock v. Haddock is overruled." 317 U.S. at 304, 63 S.Ct. at 216, 87 L.Ed. at 289.
[5] Hawes v. Hawes, 130 Ill. App.2d 546, 263 N.E.2d 625 (2nd Dist., 1970).
[6] E.g., Babson Bros. Co. v. Allison, 298 So.2d 450 (Fla.App. 1st, 1974).
[7] Sec. 410.10, California Civil Procedure Code, quoted in Pinebrook, 329 So.2d at 345.
[8] No Illinois court has construed the phrase "the time the cause of action arose" as referring to the precise moment when the last act of a series is done to accrue a cause of action. The purpose of the statute would seem to permit taking into account the antecedent acts which, together with the last act, constitute "extreme and repeated mental cruelty." See Friedman, Extension of the Illinois Long Arm Statute: Divorce and Separate Maintenance, 16 DePaul L.Rev. 45, 53-55 (1966).