346 So.2d 994 (1977)
Peter STORER and Stuart W. Patton As Co-Executors of the Estate of George B. Storer, Deceased, Petitioners,
v.
Dorothy M. STORER, Respondent.
No. 46935.
Supreme Court of Florida.
April 7, 1977.
Rehearing Denied June 28, 1977.
Sam Spector, Cynthia S. Tunnicliff, Tallahassee, and Patton, Kanner, Nadeau, Segal, Zeller & LaPorte, Miami, for petitioners.
William G. Earle and Hugo L. Black, Jr., of Kelly, Black, Black & Kenny, and Sam Daniels, Miami, for respondent.
PER CURIAM.
The petition for writ of certiorari reflected apparent jurisdiction in this Court. We issued the writ and have heard argument of the parties. Upon further consideration of the matter, we have determined that the cited decisions present no direct conflict as required by Article V, Section 3(b)(3), Florida Constitution. Therefore, the writ must be and is hereby discharged.
It is so ordered.
OVERTON, C.J., and BOYD, ENGLAND, SUNDBERG and HATCHETT, JJ., concur.
ADKINS, J., dissents with an opinion with which ROBERTS (Retired), J., concurs.
ADKINS, Justice, dissenting.
Until January, 1972, the legal residence of both husband and wife was Wyoming. The residence of the husband remained in Wyoming. Between January, 1972, and April 25, 1972, the wife changed her residence from Wyoming to Florida. On April 25, 1972, the date upon which she was served with process in Florida in the Wyoming divorce proceedings, the wife was a *995 resident of Florida and remained so during the pendency of the proceeding. The District Court held that the provisions of the Wyoming decree of divorce relating to the wife's alimony right or other property rights were not binding upon her and that portion of the Wyoming decree was not entitled to full faith and credit under the Constitution of the United States.
In Pinebrook v. Pinebrook, 329 So.2d 343 (Fla. 4th DCA 1976), the husband and wife established a marital domicile in California which they maintained for over eight years. In 1973 the wife who continued to reside in California, instituted divorce proceedings. However, the husband was residing in Utah and was served with process under the provisions under the California Long Arm statute. The husband made no appearance in the California action. The California court dissolved the marriage, awarded the wife custody of the child, ordered the husband to pay alimony, child support and attorney fees, and directed the parties to sell certain Florida real estate and to divide the proceedings therefrom.
The wife brought suit in Florida to enforce that portion of the decree ordering the disposition of the Florida property. The husband contended that this portion of the order was a personal judgment which could only be entered upon the acquisition of personal jurisdiction. The District Court held that the form of service was calculated to give actual notice to the husband by serving him by certified, airmail, return receipt requested. The court in its opinion said:
"We now turn to the second due process requirement and the second prong of our initially posed inquiry, whether appellee had sufficient minimum contacts with the forum state, California, to justify the imposition of personal jurisdiction. The power of a court to obtain personal jurisdiction over an out-of-state defendant has been greatly expanded since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877) which held that personal jurisdiction over a nonresident could only be obtained by personal service within the boundaries of the forum state or by the defendant's voluntary appearance in the action. The basic modern rule was announced in International Shoe Co. v. Washington, (326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95) supra:
"`Historically the jurisdiction of courts to render judgment in personam is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, 24 L.Ed. 565, 572. But now that the capias ad respondendum has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" 329 So.2d at 347.
The court pointed out that the minimum contact held sufficient to satisfy due process has consisted of as simple an act as maintenance of the last marital domicile within the forum state, coupled with one spouse's continued residence in the forum state. This is exactly the situation in the case sub judice, as the husband Storer remained in Wyoming.
Wyoming law permits acquisition of personal jurisdiction over a nonresident. The Wyoming court specifically found that it acquired personal jurisdiction under the laws of that state. Requiring a nondefendant to submit to such jurisdiction under the circumstances of the case sub judice is consonant with the requirements of due process.
In Storer v. Storer, 305 So.2d 212 (Fla. 3rd DCA 1975), the District Court held that the non-residence of the defendant precluded any possibility of a valid personal judgment in Wyoming which would be entitled to full faith and credit.
*996 This Court in Carroll v. Carroll, 341 So.2d 771, opinion filed January 13, 1977, in discussing venue, approved a decision of the First District Court which held that venue should be in that county in which the marriage was last evidenced by a continuing union of partners who intended to remain married, indefinitely if not permanently. As stated by the Court,
"The venue problem will be no more difficult than finding where the marriage partners called home."
Under this pronouncement, the former martial relationship in Wyoming is a sufficient minimum contact to satisfy due process.
The question before us is whether or not the long arm statute of the forum state was sufficient to acquire personal jurisdiction over the nonresident wife so that the subsequent judgment was entitled to full faith and credit. Storer v. Storer, supra, says no. Pinebrook v. Pinebrook, supra, says yes. There is conflict.
We should also note the case of Lefkovitz v. Lefkovitz, 341 So.2d 253 (Fla. 1st DCA), opinion filed December 30, 1976. The court held that an Illinois court did not acquire personal jurisdiction of the husband, a former resident of Illinois, because the act giving rise to the Illinois divorce action occurred in Florida and at that time there was no marital domicile in Illinois. The dissenting opinion, referring to the confusion now existing among the courts of Florida in applying the full faith and credit provision of the constitution, contains the following:
"Locating the marital domicile for divorce jurisdiction purposes once depended on the merits of the case, because a husband departing to another state took with him the `domicile of matrimony' and that of his wife only if he left faultlessly. Haddock v. Haddock, 201 U.S. 562, 571-72, 26 S.Ct. 525, 528, 50 L.Ed. 867, 870 (1906). The Supreme Court's first decision in Williams v. North Carolina, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942), was thought to have put an end to the difficulty of that rule by holding that courts at the domicile of either partner may divorce them. But the concept of a marital domicile  in the simpler sense of the last homeplace the marriage partners shared  has found renewed usefulness to legislatures reaching to claim for their courts personal jurisdiction, incident to the termination of marriage, to exact alimony and other financial adjustments from the absent spouse. Thus, it has repeatedly been held, most recently in Judge Owen's scholarly opinion for the District Court of Appeal, Fourth District, that due process standards permit a state to assert personal jurisdiction over a departed husband to enforce his obligation to support a stay-behind spouse long domiciled at the forum. Pinebrook v. Pinebrook, 329 So.2d 343 (Fla.App. 4th 1976), and cases cited at 348. To affirm the jurisdictional interests of that state `seems so sensible,' wrote one commentator on the murky doctrines of domicile, `that it should be obvious to any one who had never become confused by studying law.' Powell, And Repent at Leisure, 58 Harv.L.Rev. 930, 955 (1945). See also Restatement (Second) of Conflicts § 77 (1971)."
In Mitchim v. Mitchim, 518 S.W.2d 362 (Tex. 1975), the Supreme Court of Texas said:
"In personam jurisdiction may constitutionally be acquired by extraterritorial service of process on natural persons as in the case of corporations. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223; Calagaz v. Calhoon, 5th Cir., 309 F.2d 248; Owens v. Superior Court of Los Angeles Co., 52 Cal.2d 822, 345 P.2d 921; Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679. Respondent argues that this is not true with respect to cases involving marital relationships. He insists that May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221, stands for the proposition that the so-called minimum contacts doctrine has no application in the field of domestic relations. That was one of the arguments advanced by the dissenting justices in Mizner v. Mizner, supra.

*997 "The decision in May provides no support for respondent's position. It was held there that a Wisconsin divorce decree awarding custody of minor children to their father was not entitled to full faith and credit in Ohio since the Wisconsin court did not have personal jurisdiction over the mother. The lack of personal jurisdiction over the mother was due, however, to the absence of statutory authority. The Wisconsin statute authorizing extraterritorial service of process did not purport to confer personal jurisdiction over the party thus served.
"In recent years a number of states have adopted long-arm statutes with specific language making them applicable to cases growing out of domestic difficulties. These statutes are given their intended effect. See Scott v. Hall, 203 Kan. 331, 454 P.2d 449; Dillon v. Dillon, 46 Wis.2d 659, 176 N.W.2d 362. In other states long-arm statutes containing only general language have been held to confer personal jurisdiction over nonresident defendants in divorce actions. See Soule v. Soule, 193 Cal. App.2d 443, 14 Cal. Rptr. 417; Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679; Hines v. Clendenning, Okl., 465 P.2d 460; Stucky v. Stucky, 186 Neb. 636, 185 N.W.2d 656. See also 51 Neb.L.Rev. 159; 20 Hastings L.J. 361. The Arizona Court of Appeals has held that their Rule 4(e)(2) enables the court to acquire personal jurisdiction in a paternity suit. Backora v. Balkin, 14 Ariz. App. 569, 485 P.2d 292. Other decisions indicate that the courts of Arizona make no distinction between domestic relations cases and other types of suits. See Garlitz v. Rozar, 18 Ariz. App. 94, 500 P.2d 354; Rodriguez v. Rodriguez, 8 Ariz. App. 5, 442 P.2d 169." At 365.
In explaining the rationale for applying the minimum contacts test in matrimonial cases, the District Court in Pinebrook, supra, quoted from Mizner v. Mizner, 84 Nev. 268, 439 P.2d 679 (1968), cert. denied 393 U.S. 847, 89 S.Ct. 130, 21 L.Ed.2d 117 (1968), as follows:
"... it seems to us that the minimum contacts concept of in personam jurisdiction is peculiarly suited to matrimonial support cases. If such contacts are in fact present in the particular case before the court, then the extension of in personam jurisdiction beyond the borders of the forum state may prove to be a sensible step in solving some of the hardships arising from family separation. Courts must know by this time that strict application of the Pennoyer rule to family support cases has encouraged migratory divorce by offering a shield to a spouse wishing to avoid financial responsibility. The state of the matrimonial domicile has a deep interest in its citizens and a legitimate purpose in taking steps to preclude their impoverishment. Accordingly, it is our opinion that in personam jurisdiction may be acquired over a non-resident defendant in a divorce action by extraterritorial personal service of process if (1) a statute of the support ordering state has authorized the acquisition of such jurisdiction in that manner, and (2) there exist sufficient contacts between the defendant and the forum relevant to the cause of action to satisfy `traditional notions of fair play and substantial justice.' The demands of due process are satisfied in these circumstances." [footnotes omitted] 329 So.2d at 347-48.
The District Court in Pinebrook, supra, then added:
"As was pointed out by the New Jersey court, writing in Egbert v. Egbert, supra, 125 N.J. Super. 171, 309 A.2d 746 at 748:
"`The existence of a marital domicile in a state has as many consequences as economic activity does... .'
"Although the Mizner and Egbert cases were concerned specifically with the enforcement of matrimonial support provisions, we find their rationale equally compelling with regard to a provision directing a division of property such as involved in the case at bar. The enforcement of such a provision can be just as critical to the overall economic situation of the spouse remaining in the forum state as enforcement of a periodic support provision.

*998 "The minimum contacts held sufficient to satisfy due process in the cited matrimonial cases have consisted of as simple an act as maintenance of the last marital domicile within the forum state, coupled with the petitioning spouse's continued residence in the forum state, ... ." 329 So.2d at 348.
I conclude that the Wyoming law permits acquisition of personal jurisdiction over a nonresident by extraterritorial service. The Wyoming court found that such notice was given and personal jurisdiction acquired. I further conclude that requiring a defendant to submit to such jurisdiction under these circumstances is consonant of the requirements of due process. I would hold that the Wyoming divorce decree, insofar as it constituted a personal judgment, is valid and therefore entitled to enforcement in our courts under the full faith and credit clause of the United States Constitution. For that reason the petition or complaint of the wife should have been dismissed.
The decision of the District Court of Appeal should be quashed and the cause remanded to the trial judge with instructions to grant the husband's motion to quash.
ROBERTS (Retired), J., concurs.